**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| LATEX FOAM INTERNATIONAL, LLC, | : | CASE NOS. 19-51064 (JAM) |
| PURELATEX BLISS, LLC, | : | 19-51065 (JAM) |
| LATEX FOAM INTERNATIONAL HOLDINGS, INC. | : | 19-51066 (JAM) |
| PLB HOLDINGS, LLC, and | : | 19-51067 (JAM) |
| LATEX FOAM ASSETS ACQUISITION, LLC, | : | 19-51068 (JAM) |
| | : | Jointly Administered Under |
| Debtors. | : | 19-51064(JAM) |
| | : | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING**
**SECOND AMENDED JOINT PLAN OF LIQUIDATION OF LATEX FOAM**
**INTERNATIONAL, LLC AND ITS AFFILIATED DEBTORS**

The Court having considered the *Second Amended Joint Plan of Liquidation of Latex Foam International, LLC and Its Affiliated Debtors*, filed by the Latex Foam Liquidating Trust (the "Liquidating Trust") and the Official Committee of Unsecured Creditors (the "Committee" and together with the Liquidating Trust, the "Plan Proponents") dated as of September 30, 2020 [Docket No. 765] (as may be amended or supplemented from time to time in accordance with its terms and including all exhibits and supplements thereto, and the terms hereof, the "Plan") with respect to the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors", or, as applicable after the Effective Date, the "Liquidating Debtors");[1] and upon the *Order Approving Second Amended Disclosure Statement and Fixing Date for Filing Acceptance or Rejection of the Plan, Objections Thereto, and Confirmation Hearing, Combined with Notice Thereto* entered on October 1, 2020 [Docket No. 769] (the "Disclosure Statement Order"); and the Court on November 10 and November 12, 2020 having held a hearing to consider confirmation of the Plan (the "Confirmation Hearing"); and the Court having considered the *Report on Ballots and Administrative Expenses* [Docket No. 820] (the "Ballot Report") and reply [Docket No. 822] in

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as **Exhibit B,** or the Disclosure Statement Order (defined below).

support of the Plan filed by the Plan Proponents in advance of the Confirmation Hearing; the Court having admitted into the record and considered evidence at the Confirmation Hearing; the Court having overruled any and all unresolved objections to confirmation of the Plan and all reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein or on the record of the Confirmation Hearing; the Court having taken judicial notice of the contents of the docket of the Chapter 11 Cases (defined below) maintained by the clerk of the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "Clerk of the Court"), including all pleadings and other documents filed, all orders entered thereon, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases; and after due deliberation thereon, good and sufficient cause appearing therefor, and, in addition to the following, in accordance with the findings and decrees made by the Court on the record at the Confirmation Hearing, **IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED AS FOLLOWS**:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

A.    **Jurisdiction; Venue; Core Proceeding**. This Court has jurisdiction over the above-captioned chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of the United States District Court for the District of Connecticut*, dated September 21, 1984 (Daly, C.J.). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

---

[2] All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.        **Commencement and Administration of the Chapter 11 Cases**. On August 8, 2019 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases are jointly administered pursuant to an order of the Court dated August 14, 2019 [Docket No. 49]. The Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Chapter 11 Cases.

C.        **Sale of Substantially All of the Debtors' Assets.**  On June 17, 2020, the Court entered the *Order Authorizing and Approving (I) the Sale of Substantially All of the Debtors' Assets to Artilat NV Free and Clear of Interests and (II) Related Relief* [Docket No. 606] (the "Sale Order").

D.        **Filing of Plan, Plan Exhibits and Proposed Confirmation Order**.  On September 30, 2020, the Plan Proponents filed the *Second Amended Joint Plan of Liquidation of Latex Foam International, LLC and Its Affiliated Debtors* [Docket No. 765] and the *Second Amended Joint Disclosure Statement for Latex Foam International, LLC and Its Affiliated Debtors* [Docket No. 764] (the "Disclosure Statement").

E.        **Transmittal of Solicitation Package**. On or before October 6, 2020, the Plan Proponent caused the Disclosure Statement, the Plan, Disclosure Statement Order, and Class 3 Ballot (collectively, the "Solicitation Package") to be served and distributed as required by the Disclosure Statement Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the local rules for this Court (the "Local Rules"), all other provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation, all as set forth in the *Certificate of Service*, which was filed with this Court on October 8, 2020 [Docket No. 781] (the "Solicitation Affidavit").  As described herein and as evidenced by the Solicitation Affidavit, due, adequate and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, was provided in compliance with the Disclosure Statement Order, Bankruptcy Code and the Bankruptcy Rules.

F.      **Solicitation**. Votes on the Plan were solicited in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, the Local Rules, all other provisions of the Bankruptcy Code.

G.      **Ballot Report**. On November 6, 2020, the Committee filed the Ballot Report, certifying the method and results of the ballot tabulation for the Class entitled to vote under the Plan, namely Class 3 (the "Voting Class").  As evidenced by the Ballot Report, the Voting Class voted unanimously to accept the Plan.

H.      **Bankruptcy Rule 3016**. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

I.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code including, without limitation:

(a)      **Assumption and Rejection (11 U.S.C. § 1123(b)(2))**. Article VI of the Plan addresses the assumption and rejection of Executory Contracts, and meets the requirements of section 365 of the Bankruptcy Code. In accordance with Section 6.02(d) of the Plan, the Liquidating Trust has filed and served, on October 9, 2020, the *Notice of Assumption of Executory Contracts and Schedule of Assumed Executed Contracts* [Docket No. 785] (the "Cure Notice"), as set forth in the Certificate of Service filed therewith. The time given to parties-in-interest to object to the assumption or rejection of their Executory Contracts was proper and sufficient and no other or further notice is required.

(b)      **General Settlement of Claims and Interests (11 U.S.C. § 1123(b)(3))**.  In accordance and compliance with section 1123(b)(3)(A) of the Bankruptcy Code, Sections 5.03 and 5.12 of the Plan properly retains certain Causes of Action of the Debtors and, in accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 5.03 of

the Plan properly transfers and provides for commencement and pursuit of Causes of Action that are expressly preserved.

J.    **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

K.    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation and negotiation of the Plan and all modifications thereto and other resolutions embodied in the Plan and related documents. The Plan and all modifications thereto, were proposed, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and the recoveries to the Debtors' Estates' constituencies. Therefore, the Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

L.    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Any payment made or to be made by the Debtors or the Plan Administrator for services or for costs and expenses in connection with the Chapter 11 Cases, including administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

M.    **Disclosure of Identities of Successor Entities (11 U.S.C. § 1129(a)(5))**. The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan Proponents have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date, including the Plan Administrator and the

Oversight Committee, and the appointment to such offices of such Entities is consistent with the interests of Holders of Claims and Interests and with public policy.

N.      **No Rate Changes (11 U.S.C. § 1129(a)(6))**.  To the extent applicable, section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

O.      **Best Interests Test (11 U.S.C. § 1129(a)(7))**. The evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, and (3) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

P.      **Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))**. Classes 1 and 2 are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan. The Voting Class with Holders of Claims eligible to vote on the Plan, namely Class 3 (General Unsecured Claims against all Debtors), has voted to accept the Plan, without including any acceptance of the Plan by any insider. The Plan has not been accepted by Classes 4, 5, and 6, each of which is deemed to reject the Plan. Therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes that are deemed to reject the Plan. Accordingly, Confirmation is sought pursuant to section 1129(b) of the Bankruptcy Code with respect to such Classes.

Q.      **Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative Claims, Professional Claims, and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

R.      **Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))**. At least one Impaired Class of Claims in the Chapter 11 Cases voted to accept the Plan. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

S.      **Feasibility (11 U.S.C. § 1129(a)(11))**. The information in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) together with the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the Debtors' Estates, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

T.      **Payment of Fees (11 U.S.C. § 1129(a)(12))**. The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

U.      **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**. The Debtors did not provide any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at any time prior to confirmation of the Plan and therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

V.      **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

W.      **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))**. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

X.      **No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))**. Each of Debtors is a moneyed business, commercial corporation, or trust and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Y.    **Section 1129(b); Confirmation of the Plan Over Nonacceptance of Impaired Classes**. Classes 4, 5, and 6 are deemed to reject the Plan (the "**Rejecting Classes**"). Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code with respect to such Classes, other than section 1129(a)(8), have been met.  With respect to the Rejecting Classes, no Holders of Claims or Interests junior to the Holders of such Classes will receive or retain any property under the Plan on account of such Claims or Interests.  Additionally, no Class of Claims or Interests is receiving property under the Plan having a value more than the Allowed amount of such Claim or Interest. Further, the Plan does not unfairly discriminate among Classes of Claims and Interests because Holders of Claims with similar legal rights will not be receiving materially different treatment under the Plan. Specifically, classifications and recoveries under the Plan are based on the legal rights and priorities of Holders of Claims and Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding such Classes' rejection or deemed rejection of the Plan.

Z.    **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.    **Principal Purpose of Plan (11 U.S.C. § 1129(d))**. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

BB.    **Small Business Case (11 U.S.C. § 1129(e))**. None of these Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

CC.    **Plan Administrator**. The establishment of the Plan Administrator, and the selection of Chip Hoebeke (through his firm) to serve as the Plan Administrator, is appropriate and in the best interests of the Debtors' creditors and other stakeholders.

DD.    **Judicial Notice**. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

EE.    **Burden of Proof**.  The Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

FF.    **Retention of Jurisdiction**. As set forth in Article XI of the Plan, the Plan Proponents assert that this Court may retain jurisdiction over the matters set forth therein.

## <u>DECREES</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

### Confirmation of Plan

1.    **Confirmation**. The Plan, in the form attached hereto as **<u>Exhibit B</u>**, including all Exhibits attached thereto, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order and the Plan Proponents are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

2.    **Objections**. For the reasons stated on the record at the Confirmation Hearing, and except as set forth in paragraph 19 of this Order, all objections and all reservations of rights that have not been withdrawn, waived, or settled pertaining to the Confirmation of the Plan are hereby overruled.

3.    **Authorization to Implement the Plan**. Upon the entry of this Confirmation Order (subject to the occurrence of the Effective Date), the Debtors, the Liquidating Debtors, the Plan Administrator, the Plan Proponents, Oversight Committee, and any third party Distribution Agent, as applicable, and their respective professionals, are authorized to take, or cause to be taken, all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, prior to, on, and after the Effective Date.  The Debtors and the Liquidating Debtors are authorized to make all payments required to be made under the Plan at any time on and after the Effective Date. Section 1141 of the Bankruptcy Court shall take effect on the Effective Date.

4.    **Post-Effective Date Governance and Dissolution of Debtors**. Immediately upon the occurrence of the Effective Date, (a) the respective boards of directors and/or manager of each of the Debtors shall be terminated and the members of the boards of directors of the Debtors shall be deemed to have resigned, and (b) the Plan Administrator shall be appointed as the sole officer, director and/or manager of each of the Liquidating Debtors (to the extent such Debtors are not being dissolved as of or in connection with the Effective Date).  On the Effective Date, the Debtors or the Plan Administrator, on behalf of the Liquidating Debtors, may execute and file documents and take all other actions as they deem appropriate relating to the foregoing corporate actions under applicable state laws and, in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect any necessary corporate changes of the Debtors as provided herein, without the payment of any fee, tax or charge and without the need for the filing of reports or certificates.

5.    **Exemption from Certain Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code.

## Unexpired Leases and Executory Contracts

6.        **Rejection and Assumption of Executory Contracts and Unexpired Leases**. The Executory Contract and Unexpired Lease provisions of Article VI of the Plan are approved.

## Bar Dates and Other Deadlines

7.        **Administrative Claims Bar Date**. Except as otherwise provided herein or in the Plan and as set forth in Sections 2.01 and 2.02 of the Plan, all requests for payment of an Administrative Claim must be filed and served on counsel for the Liquidating Debtors and the Plan Administrator no later than the Administrative Claims Bar Date, which date shall be twenty calendar days after the Effective Date of the Plan (as set forth in the notice of Effective Date to be filed by the Plan Proponents), unless otherwise ordered by the Bankruptcy Court, and except with respect to (a) Professional Claims,  (b) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (c) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid, (d) Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code (which Claims are subject to the December 9, 2019 deadlines as established by the Bar Date Order), or (e) Administrative Claims arising under chapter 123 of title 28 of the United States Code.  Holders of Administrative Claims that are required to, but do not, file and request payment of such Administrative Claim(s) by the applicable Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed automatically Disallowed in full as of the Effective Date without the need for any objection from the Debtors or the Plan Administrator.

## Plan Administrator

8.        **Plan Administrator**. The appointment, rights, powers and duties, and compensation of the Plan Administrator as set forth in section 5.08 of the Plan is hereby approved, and the Debtors, the Liquidating Debtors, the Plan Proponents and/or the Plan Administrator are

hereby authorized, as applicable, to execute and/or to take any action necessary or appropriate to implement, effectuate, or consummate the Plan. The appointment of Chip Hoebeke (through his firm) as Plan Administrator is hereby approved.

9.      The Liquidating Debtors and the Plan Administrator shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan, which for the avoidance of doubt, shall include pursuing (or not pursuing) the Causes of Action and the investigation, prosecution and/or settlement or other disposition of such Causes of Action.  The Plan Administrator shall seek to preserve and protect all applicable privileges of the Liquidating Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) as set forth in Section 5.15 of the Plan.  The Plan Administrator's sharing of information or documents with the Oversight Committee shall not waive any privileges and such privileges are preserved.  Such rights, powers and duties, which will be exercisable by the Plan Administrator on behalf of the Liquidating Debtors and the Estates pursuant to the Plan shall include, among others, the rights, powers and duties set forth in Section 5.08(b) of the Plan.

10.      The Plan Administrator is authorized to execute and/or file any documents necessary to carry out the rights, powers, and duties set forth in the Plan, including, *inter alia*, executing and filing tax returns on behalf of the Debtors and Liquidating Debtors after the Effective Date.

11.      **Preservation of Causes of Action**.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors and their Estates shall retain all of the Debtors' Causes of Action (including those Causes of Action identified in the Exhibits to the Plan) and such retained Causes of Action of the Debtors shall be assigned to and vest in the Plan Administrator on the Effective Date. The Plan Administrator may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or the dissolution of the Debtors. The Plan Administrator, subject to Section 5.13 of the Plan but otherwise in its discretion,

shall determine whether to bring, pursue, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Plan Administrator may pursue Causes of Action (i) in accordance with the best interests of the beneficiaries of the Debtors' estates. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will pursue or not pursue any and all available Causes of Action. The Plan Administrator and Liquidating Debtors expressly reserve all rights to prosecute any and all Causes of Action of the Debtors against any Entity, except as otherwise expressly provided in the Plan or to the extent released pursuant to other Orders of the Bankruptcy Court.** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Plan Administrator expressly reserves all of the Debtors' Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan.

12.    **Oversight Committee**. The appointment of the Oversight Committee is hereby approved. The Oversight Committee shall have all rights, powers, duties, and protections afforded the Oversight Committee and its members under the Plan until such Oversight Committee is dissolved and discharged (or any such members of the Oversight Committee resign or are deemed to have resigned) pursuant to the Plan.

13.    **Preservation of Privileges and Defenses**. On the Effective Date, all of the Debtors' privileges and work product, including but not limited to any attorney-client privilege and work-product privilege attaching to any document or communications (whether written or oral), related to Causes of Action, shall be maintained by the Plan Administrator, which will have exclusive authority to waive or not waive the Debtors' privileges in its sole discretion. Nothing in the Plan (including Section 5.15 of the Plan) or this Confirmation Order is intended to, does, or

may be construed to expand the privileges or other protections against disclosure, if any, belonging to the Debtors as of the Effective Date, it being understood that the purpose of Section 5.15 of the Plan and this Confirmation Order is to ensure that any privileges and other protections against disclosure existing as of the Effective Date are preserved and are not waived. The Plan Administrator will seek to preserve and protect all applicable privileges and work product vested in the Liquidating Debtors and the Plan Administrator. The Plan Administrator's receipt of such information and the sharing of such information or documents with the Oversight Committee shall not waive any privileges and such privileges are preserved. The Liquidating Debtors and the individual directors, officers or members/managers of the Debtors shall remain in control of all of their respective privileges (subject to provision of Section 5.15 of the Plan, including the privileges maintained by the Plan Administrator relating to the Causes of Action), and the Liquidating Debtors, and the individual directors, officers or members/ managers of the Debtors, each as applicable, retain the right to waive their own privileges prospectively.

14.     Notwithstanding anything to the contrary in the Plan, (i) the Oversight Committee shall not be automatically disbanded upon the payment in full of all Class 3 Allowed General Unsecured Claims and (ii) the Oversight Committee shall remain in place until distribution of all material assets of the Debtors' Estates have been fully administered, at which point the Oversight Committee shall be automatically disbanded.

### Notice and Other Provisions

15.     **Notice of Confirmation Order and Occurrence of Effective Date**. The Plan Administrator shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within one Business Day after the conditions in Section 10.01 of the Plan have been satisfied or waived pursuant to Section 10.02 of the Plan.

16.     The Plan Administrator shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date on (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties

included in the Debtors' creditor and notice party matrix, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as **Exhibit C** (the "Notice of Effective Date"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid.  Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Entity to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "**undeliverable as addressed**," "**moved—left no forwarding address**," "**forwarding order expired**," or similar reason, unless the Plan Proponents have been informed in writing by such Person of that Person's new address. The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

17.     **Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002**. After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to the Office of the United States Trustee, Counsel to the Plan Administrator, Counsel to the Oversight Committee, and those creditors who have filed such renewed requests (the "**Post-Confirmation Master Service List**"); *provided, however*, that the Plan Administrator also shall serve those parties directly affected by, or having a direct interest in, the particular filing.  Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

18.     **Failure to Consummate Plan and Substantial Consummation**. If the Plan Proponents revoke or withdraw the Plan prior to the Effective Date in accordance with its terms, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount

certain Claims or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void in all respects. In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity..

19.    **Plan Section 3.03:** This section of the Plan shall be replaced in its entirety with the following:  Any and all Claims of Entrepreneur Growth Capital, LLC ("EGC") against the Debtors to date, including its Claim No. 22 filed on October 17, 2019, have been satisfied in full pursuant to the Order Granting Entrepreneur Growth Capital, LLC's Motion For Payment Of Secured Creditor Claim And Fee Application (the "EGC Order"), entered by the Bankruptcy Court on July 31, 2020 [Docket No. 670].   For avoidance of doubt, to the extent the EGC Order is reversed or otherwise modified and such reversal or modification results in EGC having been ordered to return funds to the estate as requested in the pending appeal of the EGC Order, EGC shall return such amount to the Plan Administrator no more than ten (10) business days from the date of notice of entry of a final order, after all appeals of the EGC Order have been exhausted. Furthermore, EGC reserves the right to seek from the Bankruptcy Court reimbursement of its costs and expenses as set forth in its loan documents, including attorneys' fees and expenses incurred in connection with the appeal of the EGC Order, and the Plan Proponents and the Plan Administrator retain the right to object to any such request.  Nothing herein shall be a determination of such a claim or defense and the parties' rights are preserved.  Provided, further, and without prejudice to any party, on or before the Effective Date, the Debtors shall establish and fund a reserve in favor of EGC in the amount of $30,000 (the "EGC Reserve"), and EGC shall file a motion (if at all) in this Court seeking allowance of its costs and expenses including those related to the appeal of the

EGC Order within 30 days of notice of entry of a final order, after all appeals of the EGC Order have been exhausted.  Should such a motion not be timely filed, the EGC Reserve shall be released to the Liquidating Debtors.  Nothing herein shall be construed as or deemed to be (a) a cap on the amount that EGC may seek by way of such a motion or (b) agreement by the Plan Proponents or the Plan Administrator that EGC is entitled to payment of any portion of the EGC Reserve or from any other source.

20.    **Dissolution of Creditors' Committee**.    On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released from all rights and duties from or relating to the Chapter 11 Cases in accordance with Section 12.05 of the Plan, *provided, however*, that the Creditors' Committee will stay in existence solely for the limited purpose of filing and prosecuting its final fee applications, prosecuting any pending appeals, and as otherwise set forth in the Plan.

21.    **Exhibits**.  Each reference to a document, agreement or summary description that is in the form attached as an Exhibit to the Plan or this Confirmation Order shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description (whether filed as an attachment to the Plan or this Confirmation Order or filed separately).

22.    **Plan and Confirmation Order Mutually Dependent; Severability**.  This Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, other than as modified pursuant to this Confirmation Order, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Plan Proponents, and (c) non-severable and mutually dependent.

23.    **Incorporation**.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed and approved in its entirety by this Confirmation Order and be incorporated herein by reference.

24.     **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

25.     **Retention of Jurisdiction**. Notwithstanding the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan (without prejudice to the rights, if any, of any party in interest to seek to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and related law with respect to any issue or proceeding subject to mandatory or discretionary withdrawal) to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XI of the Plan, which provisions are incorporated herein by reference.

26.     **Enforceability of Plan**. Pursuant to Bankruptcy Code sections 1123(a), 1141(a), and 1142, and the provisions of this Confirmation Order, the Plan shall be, and hereby is, valid, binding, and enforceable, notwithstanding any otherwise applicable non-bankruptcy law. The Debtors or the Liquidating Debtors, as the case may be, the Plan Administrator and the Oversight Committee, are immediately authorized and directed to take all actions necessary or appropriate to, enter into, amend, modify, implement, and consummate, as necessary and applicable, all agreements or documents created under or arising in connection with the Plan, without further order of this Court, in accordance and consistent with the provisions of the Plan.

27.     **Final Decree**:  On or before February 28, 2021 or as otherwise ordered by the Court, the Plan Administrator shall file an application for final decree in accordance with Fed.R.Bankr.P. 3022 and D. Conn. LBR 3022-1.

28.     **Final Order**. Notwithstanding the stay contemplated by Bankruptcy Rule 3020(e) and Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062 or otherwise, immediately after entry of this Confirmation Order but subject to the occurrence of the Effective Date, the Plan and

this Confirmation Order shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Liquidating Debtors and all other parties in interest in the Chapter 11 Cases.  Accordingly, as permitted by Bankruptcy Rule 3020(e), the fourteen (14) day period provided by such rule is hereby waived in its entirety.

Dated at Bridgeport, Connecticut this 12th day of November, 2020.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut

## **EXHIBIT A**

**Administrative Claim Request Form**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT BRIDGEPORT DIVISION | ADMINISTRATIVE CLAIM REQUEST FORM |
|---|---|

**Name of Debtor (check one):**

☐ Latex Foam International, LLC (19-51064)  ☐ Purelatex Bliss LLC (19-51067)
☐ Latex Foam International Holdings, Inc. (19-51065)  ☐ PLB Holdings, LLC (19-51068)
☐ Latex Foam Assets Acquisition, LLC (19-51066)

NOTE: This form should only be used to make a claim for an Administrative Claim arising <u>on or after August 8, 2019, through and including November 10, 2020</u>. **IT SHOULD NOT BE USED FOR CLAIMS ARISING PRIOR TO AUGUST 8, 2019 OR CLAIMS FOR WHICH THE PURCHASER OF THE DEBTORS' ASSETS IS RESPONSIBLE FOR.**

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent: | ☐ Check box if you have never received any notices from the bankruptcy court in this case. |
| | ☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone number: Email Address: | |
| Last four digits of account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: |

| 1.  **Basis for Claim:** ☐ Goods sold ☐ Services performed ☐ Money loaned ☐ Taxes ☐ Other | ☐ Retiree benefits as defined in 11 U.S.C. §1114(a) ☐ Wages, salaries, and compensation (fill outbelow) Last four digits of SS#: _____ Unpaid compensation for services performed from_____ to _____ (date)                    (date) |
|---|---|

| 2.  **Date debt was incurred (must be on or after_____):** | 3. **If court judgment, date obtained:** |
|---|---|

4.  **Total Amount of Administrative Claim: $** _____

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5.  **Brief Description of Claim (attach any additional information):**

6.  **Credits and Setoffs:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7.  **Supporting Documents:**
Attach copies of supporting document, such as promissory notes, contracts, security agreements, and evidence of perfection of liens. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

8.  **DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| 9.  **Assignment:** ☐ If the Claimant has obtained this claim by Assignment, a copy is attached hereto | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|

# INSTRUCTIONS FOR ADMINISTRATIVE CLAIM REQUEST FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that Date not filed voluntarily by the debtor there may be exceptions to these general rules.* Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

## ----DEFINITIONS-----

### DEBTOR
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### CREDITOR
A creditor is any person, corporation, or other entity to whom the debtor owes a debt.

### ADMINISTRATIVE CLAIM
A claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Professional Claims; (c) Section 503(b)(9) Claims; and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code.

### PARTIES REQUIRED TO FILE ADMINISTRATIVE CLAIM REQUEST FORM
Pursuant to Section 2.01 of the Plan, any entity asserting an Administrative Claim must file a completed Administrative Claim Request Form by the Administrative Claims Bar Date, except for any Holder of (a) a Professional Claim, (b) an Administrative Claim Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (c) an Administrative Claim that is not Disputed and arose in the ordinary course of business and was paid, or (d) an Administrative Claim arising under chapter 123 of title 28 of the United States Code.

### ADMINISTRATIVE CLAIM BAR DATE
Pursuant to Sections 1.05 and 2.01 of the Plan, any request for payment of an Administrative Claim that has arisen between the Petition Date and the Effective Date must be filed no later than **December [2], 2020.**

**Name of Debtor and Case Number:**
If your claim form is not preprinted with the name of the debtor and the case number, fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. If you previously received a notice of the case from the Court, your name and address is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed an administrative proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this administrative proof of claim replaces or amends an administrative proof of claim that was already filed, check the appropriate box on the form.

1. **Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

3. **Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

4. **Total Amount of Claim:**
Fill in the total amount of the entire administrative claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate boxes on the form and attach an itemization of the interest and charges.

5. **Brief Description of Administrative Claim:**
Describe the Administrative Claim including, but not limited to, the actual and necessary costs and expenses of operating the Debtor's Estate or any actual and necessary costs and expenses of operating the Debtor's businesses.

6. **Offsets, Credits and Setoffs:**
By signing this administrative proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

7. **Supporting Documents:**
You must attach to this administrative proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

8. **Date-Stamped Copy:**
To receive an acknowledgement of the filing of your Administrative Claim, enclose a stamped, self-addressed envelope and copy of this Administrative Claim Request Form.

---

Please send original, completed administrative proofs of claim as follows:

**By Mail, Hand, or Overnight Courier:**

United States Bankruptcy Court
Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604

**Electronically:**

ecf.ctb.uscourts.gov

Any proof of claim submitted by facsimile or email will not be accepted.

**All claims must be received on or before December [2], 2020**

## **EXHIBIT B**

**Second Amended Joint Plan of Liquidation of Latex Foam International, Inc. and Its Affiliated Debtors**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LATEX FOAM INTERNATIONAL, LLC, | Case No. 19-51064 |
| PURELATEX BLISS LLC | Case No. 19-51067 |
| LATEX FOAM INTERNATIONAL HOLDINGS, INC., | Case No. 19-51065 |
| PLB HOLDINGS, LLC, and | Case No. 19-51068 |
| LATEX FOAM ASSETS ACQUISITION, LLC, | Case No. 19-51066 |
| Debtors. | (Jointly Administered under case number 19-51064) |

### SECOND AMENDED JOINT PLAN OF LIQUIDATION OF LATEX FOAM INTERNATIONAL, LLC AND ITS AFFILIATED DEBTORS

| | |
|---|---|
| **SCHAFER AND WEINER, PLLC** | **LOWENSTEIN SANDLER LLP** |
| Michael E. Baum, Esq. | Wojciech F. Jung, Esq. |
| John Stockdale, Jr., Esq. | 1251 Avenue of the Americas |
| 40950 Woodward Ave., Ste. 100 | New York, NY 10020 |
| Bloomfield Hills, MI  48304 | (973) 597-2500 |
| (248) 540-3340 | E-mail: wjung@lowenstein.com |
| E-mail: MBaum@schaferandweiner.com | |
| | -and- |
| -and- | |
| | **PULLMAN & COMLEY, LLC** |
| **NEUBERT, PEPE & MONTEITH, P.C.** | Irve J. Goldman, Esq. (CT Bar No. 02404) |
| Douglas S. Skalka, Esq.  (CT Bar No. 00616) | 850 Main Street, 8th Floor |
| 195 Church Street, 13th Floor | P.O. Box 7006 |
| New Haven, CT 06510 | Bridgeport, CT 06601 |
| (203) 821-2000 | (203) 330-2213 |
| E-mail: dskalka@npmlaw.com | E-mail: jgoldman@pullman.com |
| | |
| *Counsel for the Latex Foam International Liquidating Trust* | *Counsel for the Official Committee of Unsecured Creditors* |

Dated:  September 30, 2020

# TABLE OF CONTENTS

**Page**

ARTICLE I          DEFINED TERMS, RULES OF INTERPRETATION, AND
COMPUTATION OF TIME .........................................................1

ARTICLE II         ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.............13

Section 2.01.      Administrative Claims ..........................................................13

Section 2.02.      Professional Claims.............................................................13

Section 2.03.      Priority Tax Claims .............................................................15

ARTICLE III        CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS
AND INTERESTS......................................................................15

Section 3.01.      Classification of Claims and Interests...................................15

Section 3.02.      Treatment and Voting of Claims and Interests ......................16

ARTICLE IV         ACCEPTANCE ........................................................................18

Section 4.01.      Classes Entitled to Vote ......................................................18

Section 4.02.      Acceptance by Impaired Classes...........................................19

Section 4.03.      Elimination of Classes .........................................................19

Section 4.04.      Deemed Acceptance if No Votes Cast ...................................19

Section 4.05.      Cramdown ...........................................................................19

ARTICLE V          MEANS OF IMPLEMENTATION OF THE PLAN ...................19

Section 5.01.      Substantive Consolidation....................................................19

Section 5.02.      Post-Effective Date Governance and Dissolution of Debtors...............20

Section 5.03.      Causes of Action .................................................................21

Section 5.04.      Plan Settlement and General Settlement of Claims and Interests.........21

Section 5.05.      Plan Funding .......................................................................22

Section 5.06.      Certificate of Incorporation and By-laws...............................22

Section 5.07.      Cancellation of Certain Instruments and Agreements ...........22

Section 5.08.      The Plan Administrator ........................................................22

Section 5.09.      Distributions to Holders of General Unsecured Claims.........24

Section 5.10.      Accounts and Reserves ........................................................25

Section 5.11.      Exemption from Certain Transfer Taxes...............................27

Section 5.12.      Preservation of Causes of Action.........................................27

Section 5.13.    Oversight Committee ...............................................................28

Section 5.14.    Insured Claims ......................................................................29

Section 5.15.    Preservation of Privilege and Defenses................................30

Section 5.16.    Books and Records...............................................................30

ARTICLE VI    UNEXPIRED LEASES AND EXECUTORY CONTRACTS....................31

Section 6.01.    Executory Contracts and Unexpired Leases to Be Rejected................31

Section 6.02.    Executory Contracts to Be Assumed ....................................32

Section 6.03.    General Reservation of Rights ...............................................34

Section 6.04.    Insurance Contracts...............................................................34

ARTICLE VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
INTERESTS .......................................................................35

Section 7.01.    Determination of Claims and Interests..................................35

Section 7.02.    Claims Administration Responsibility ..................................36

Section 7.03.    Objections to Claims .............................................................36

Section 7.04.    Disallowance of Claims ........................................................36

Section 7.05.    Estimation of Claims .............................................................37

Section 7.06.    No Interest on Disputed Claims .............................................37

Section 7.07.    Amendments to Claims ..........................................................37

ARTICLE VIII    PROVISIONS GOVERNING DISTRIBUTIONS ......................................38

Section 8.01.    Timing of Distributions for Allowed Claims ........................38

Section 8.02.    Currency.................................................................................38

Section 8.03.    Distribution Agent.................................................................38

Section 8.04.    Distributions on Claims Allowed After the Effective Date ................38

Section 8.05.    Delivery of Distributions.......................................................39

Section 8.06.    Compliance Matters ..............................................................41

Section 8.07.    Claims Paid or Payable by Third Parties...............................41

Section 8.08.    Setoffs ...................................................................................41

Section 8.09.    Allocation of Plan Distributions Between Principal and Interest ........42

ARTICLE IX    EFFECT OF PLAN ON CLAIMS AND INTERESTS..............................42

Section 9.01.    Vesting of Assets ..................................................................42

Section 9.02.    Compromise and Settlement ..................................................42

Section 9.03.    Exculpation and Limitation of Liability................................42

Section 9.04.      Injunction ................................................................................43

Section 9.05.      Subordination Rights.............................................................44

Section 9.06.      Protection Against Discriminatory Treatment ......................44

Section 9.07.      Release of Liens ....................................................................44

Section 9.08.      Reimbursement or Contribution.............................................45

ARTICLE X        CONDITIONS PRECEDENT ..............................................45

Section 10.01.    Conditions Precedent to the Effective Date of the Plan.......45

Section 10.02.    Waiver of Conditions Precedent ...........................................45

Section 10.03.    Notice of Effective Date........................................................45

Section 10.04.    Effect of Non-Occurrence of Conditions to Consummation.................46

ARTICLE XI       BANKRUPTCY COURT JURISDICTION.............................46

Section 11.01.    Retention of Jurisdiction .......................................................46

ARTICLE XII      MISCELLANEOUS PROVISIONS.......................................48

Section 12.01.    Binding Effect ........................................................................48

Section 12.02.    Payment of Statutory Fees .....................................................48

Section 12.03.    Closing of Certain Debtor Cases Upon the Effective Date...................48

Section 12.04.    Application of Bankruptcy Rule 7068 ...................................49

Section 12.05.    Statutory Committee Dissolution...........................................49

Section 12.06.    Post Effective Date Limitation of Notice...............................49

Section 12.07.    Modification and Amendment ................................................49

Section 12.08.    Confirmation of Plan..............................................................50

Section 12.09.    Additional Documents ...........................................................50

Section 12.10.    Revocation, Withdrawal, Non-Consummation .....................50

Section 12.11.    Post-Confirmation Reporting.................................................50

Section 12.12.    Substantial Consummation of the Plan ..................................51

Section 12.13.    Substitution of the Liquidating Debtors for the Debtors.....................51

Section 12.14.    Request for Expedited Determination of Taxes .....................51

Section 12.15.    Notices....................................................................................51

Section 12.16.    Term of Injunctions or Stays..................................................52

Section 12.17.    Governing Law........................................................................52

Section 12.18.    Immediate Binding Effect ......................................................52

Section 12.19.    Entire Agreement ...................................................................52

Section 12.20.    Severability ........................................................................................52

Section 12.21.    No Waiver or Estoppel..........................................................................53

Section 12.22.    Conflicts ..............................................................................................53

## INTRODUCTION

The Latex Foam International Liquidating Trust and the Official Committee of Unsecured Creditors jointly propose this chapter 11 plan of liquidation for the above-captioned debtors in the above-captioned chapter 11 cases. The Plan is proposed jointly for administrative purposes, and provides for the treatment of all Claims against and Interests in the Debtors. The Plan constitutes a separate Plan for each Debtor, provided that as set forth in further detail below, and in order to give effect to the Plan's comprehensive compromise and settlement structure pursuant to Bankruptcy Rule 9019 and section 1123(b) of the Bankruptcy Code, for purposes of distributions and recoveries to general unsecured creditors and interest holders, the Plan provides for substantive consolidation of certain of the Debtors' estates. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof or the Bankruptcy Code or Bankruptcy Rules. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, and operations, as well as a summary and description of the Plan and certain related matters. The Latex Foam International Liquidating Trust and the Official Committee of Unsecured Creditors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A.    Defined Terms.

As used in this Plan, capitalized terms have the meanings set forth below.

**1.01** "**Administrative and Priority Claims Estimate**" means (i) the amount of all unpaid and asserted Administrative Claims, Priority Tax Claims, and Other Priority Claims (other than Professional Claims which shall be subject to and paid from the Professional Claims Reserve, to the extent Allowed) based on the asserted amount of such Claims, or (ii) as otherwise (a) estimated by the Bankruptcy Court for distribution and/or reserve purposes or (b) stipulated or agreed to between the Debtors or Liquidating Debtors and any Holder(s) of such unpaid asserted Claim(s) (and any such stipulation or agreement shall be subject to the reasonable consent of the Creditors' Committee or the Oversight Committee (to the extent not disbanded pursuant to Section 5.13), as the case may be, such consent not to be unreasonably withheld).

**1.02** "**Administrative and Priority Claims Reserve**" means the reserve of Cash funded by the Debtors on the Effective Date, in an amount equal to the Administrative and Priority Claims Estimate or such other amount determined by the proponents of the Plan, for the benefit of Holders of unpaid Allowed Administrative Claims (other than Holders of Professional Claims which shall be subject to and paid from the Professional Claims Reserve), Allowed Priority Tax Claims and Allowed Other Priority Claims.

**1.03** "**Administrative and Priority Claims Schedule**" has the meaning set forth in Section 5.10(b) of the Plan.

1.04    "**Administrative Claim**" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Professional Claims; (c) Section 503(b)(9) Claims; and (d) all fees and charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

1.05    "**Administrative Claim Bar Date**" means the deadline for filing requests for payment of Administrative Claims, which shall be 20 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to (a) Professional Claims, (b) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (c) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid, (d) Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code (which Claims are subject to the December 9, 2019 deadline as established by the Bar Date Order), or (e) Administrative Claims arising under chapter 123 of title 28 of the United States Code.

1.06    "**Administrative Claim Request Form**" means the form for submitting Administrative Claim requests attached to the Confirmation Order as **Exhibit A**.

1.07    "**Administrative Claims Protocol**" has the meaning set forth in Section 5.10(b) of the Plan.

1.08    "**Affiliates**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.09    "**Allowed**" means (a) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009 (and upon prior notice to the Creditors' Committee or the Oversight Committee, as applicable) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with this Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective Holder, (c) any Claim expressly allowed by the Plan, or (d) any Claim expressly allowed by a Final Order.

1.10    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and in effect during the pendency of these Chapter 11 Cases.

1.11    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Connecticut with jurisdiction over the Chapter 11 Cases (or, in the event such court does not have or ceases to exercise jurisdiction over the Chapter 11 Cases, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases).

**1.12** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**1.13** "**Bar Date**" means the deadlines set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing proofs of Claim in the Chapter 11 Cases.

**1.14** "**Bar Date Order**" means the notice, dated August 9, 2019, filed in the Chapter 11 Cases at Docket No. 14, which established the Bar Date, and any subsequent order or notice supplementing such notice or relating thereto.

**1.15** "**Business Day**" means any day, excluding Saturdays, Sundays, and "**legal holidays**" (as defined in Bankruptcy Rule 9006(a)).

**1.16** "**Cash**" means legal tender of the United States of America.

**1.17** "**Causes of Action**" means any action, claim, cause of action, controversy, including but not limited to those identified on **Exhibit A** hereto, third-party claim, demand, right, action, Lien, indemnity, contribution, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including but not limited to any Claim to avoid a transfer of property or an obligation incurred by any of the Debtors, including pursuant to sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes, common law and foreign law fraudulent transfer or similar claims); (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in section 558 of the Bankruptcy Code, and (e) any cause of action against any professional who may have provided, or failed to provide proper advice to any of the Debtors, and (f) any cause of action against former and current a director, officer, member or manager of any of the Debtors.

**1.18** "**Certificate**" means any instrument evidencing a Claim or an Interest.

**1.19** "**Chapter 11 Cases**" means the chapter 11 cases of the Debtors pending in the Bankruptcy Court and being jointly administered under Case No. 19-51064.

**1.20** "**Sale**" means the sale of substantially all of substantially all of the Debtors' assets as authorized pursuant to the Sale Order and which sale closed on July 2, 2020.

**1.21** "**Sale Motion**" means the *Debtors' Motion For Entry Of (I) An Order (A) Approving Bidding Procedures And Bidder Protections In Connection With The Sale Of*

*Substantially All Of The Debtors' Assets, (B) Authorizing The Debtors To Enter Into Stalking Horse Agreement And (C) Scheduling A Final Sale Hearing And Approving The Form And Manner Of Notice Thereof And (II) An Order (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Any Interest In Such Assets And (B) Granting Certain Related Relief* filed by the Debtors in the Chapter 11 Cases on April 30, 2020 at Docket No. 528.

1.22    "**Claim**" means a "**claim**" against the Debtors, as defined in section 101(5) of the Bankruptcy Code.

1.23    "**Claims Objection Deadline**" means the later of (a) (i) as to Rejection Damages Claims, the first Business Day that is at least 120 days after such Rejection Damages Claim is timely filed pursuant to Section 6.01(b) of the Plan; (ii) as to late-filed proofs of Claim, the first Business Day that is at least 60 days after a Final Order is entered deeming the late-filed Claim timely filed; and (iii) as to all other Claims the first Business Day that is at least 120 days after the Effective Date; or (b) such later date as may be established by the Bankruptcy Court by motion of the Plan Administrator, which deadline shall be automatically extended upon the filing of such a motion until such time as the Bankruptcy Court enters an order on such motion.

1.24    "**Class**" means a category of Claims or Interests classified together under this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.25    "**Confirmation**" means the entry, within the meaning of Bankruptcy Rules 5003 and 9012, of the Confirmation Order, on the docket of the Chapter 11 Cases.

1.26    "**Confirmation Date**" means the date on which Confirmation occurs.

1.27    "**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.28    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code which shall be in form and substance acceptable to the proponents of the Plan (and with respect to any changes to the Confirmation Order so-ordered or otherwise required by the Bankruptcy Court, reasonably acceptable to the proponents of the Plan).

1.29    "**Creditors' Committee**" means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code, as may be reconstituted from time to time.

1.30    "**Cure Amount**" means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (ii) permit the Debtors to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

**1.31** "**Cure Notice**" means the notice of proposed Cure Amount provided to counterparties to assumed Executory Contracts or Unexpired Leases pursuant to Section 6.02(d) of the Plan.

**1.32** "**Cure Objection Deadline**" means the deadline for filing objections to a Cure Notice or proposed Cure Amount, which shall be on or before 14 days after the applicable counterparty was served with a Cure Notice.

**1.33** "**D&O Insurer**" means any insurance company that issued a D&O Policy, including, without limitation, National Casualty Company, Argonaut Insurance Company, and Nationwide Mutual Insurance Company, and affiliated companies thereof.

**1.34** "**D&O Policies**" means, collectively, all unexpired directors' and officers' liability insurance policies (including any tail policy) issued to any of the Debtors covering potential liability of directors, officers and/or employees of the Debtors, including without limitation, for the avoidance of doubt, those policies listed on **Exhibit B** to the Plan.

**1.35** "**Debtors**" mean, collectively, Latex Foam International, LLC, Purelatex Bliss LLC, LFIH, PLB Holdings, LLC, and Latex Foam Assets Acquisition, LLC.

**1.36** "**Disallowed**" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed.

**1.37** "**Disclosure Statement**" means the disclosure statement for this Plan, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, which is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, which shall be in form and substance acceptable to the proponents of the Plan.

**1.38** "**Disclosure Statement Order**" means the Final Order entered by the Bankruptcy Court approving the Disclosure Statement, which shall be in form and substance acceptable to the proponents of the Plan.

**1.39** "**Disputed**" means any Claim, or any portion thereof, that is not yet Allowed or Disallowed.

**1.40** "**Dissolution Date**" means the date that the Liquidating Debtors, or any of them, dissolve.

**1.41** "**Distribution Agent**" means the Plan Administrator; *provided, however*, that the Debtors, or the Plan Administrator, as applicable, may, in its discretion, retain a third party to act as Distribution Agent.

**1.42** "**Distribution Date**" means each of the Initial Distribution Date and Periodic Distribution Date(s), as applicable.

**1.43** "**Distribution Record Date**" means the record date for purposes of making distributions under the Plan, which date shall be the Confirmation Date.

**1.44**   "**Effective Date**" means the first Business Day on which (i) all conditions precedent to the effectiveness of this Plan set forth in Section 10.01 of the Plan have been satisfied or waived in accordance with the terms of this Plan and, unless waived by the Plan Proponents, (ii) no stay of the Confirmation Order is in effect.

**1.45**   "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.46**   "**Estates**" means the bankruptcy estates of each of the Debtors created under section 541 of the Bankruptcy Code.

**1.47**   "**Exculpated Parties**" means, collectively, each of the following solely in their respective capacities as such: (a) the Debtors; (b) the Liquidating Debtors; (c) the Creditors' Committee and each of its current and former member, (d) the Latex Trust and each of its current and former member; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such Entity's financial advisors, attorneys, accountants, and investment bankers, *provided* that Holders of Interests in LFIH shall not be Exculpated Parties solely on account of such Interests, *provided, further*, that for the avoidance of doubt, any party against whom the Debtors, the Liquidating Debtors or the Plan Administrator, as the case may be, have filed a Cause of Action before, on, or after the Effective Date shall not be exculpated with respect to such Cause of Action to the extent such Cause of Action asserts claims based upon events or actions that occurred prior to the Petition Date.

**1.48**   "**Executory Contract**" means any contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.49**   "**Final Decree**" means a final decree entered by the Bankruptcy Court closing the Chapter 11 Cases pursuant to Bankruptcy Rule 3022.

**1.50**   "**Final Order**" means an order, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.51**   "**General Unsecured Claim**" means any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Subordinated Claim, or Intercompany Claim. Without limiting the foregoing, General

Unsecured Claims include (a) Rejection Damages Claims and (b) Reclamation Claims (if any) that are not Allowed Section 503(b)(9) Claims.

       1.52    "**Governmental Bar Date**" means February 4, 2020.

       1.53    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

       1.54    "**GUC Claims Reserve**" means one or more reserves of Cash funded by the Distribution Agent on each Distribution Date in an amount equal to the GUC Claims Reserve Amount and maintained by the Distribution Agent, in each case, for the benefit of Holders of Disputed General Unsecured Claims that subsequently become Allowed General Unsecured Claims, provided that the Distribution Agent may, in its discretion (after consultation with the Creditors' Committee or Oversight Committee (to the extent not disbanded pursuant to Section 5.13), as applicable), establish separate GUC Claims Reserves or sub-accounts within such reserves with respect to Holders of Disputed General Unsecured Claims.

       1.55    "**GUC Claims Reserve Amount**" means, as applicable, Cash equal to the aggregate Pro Rata Share that would be distributable to Holders of Disputed General Unsecured Claims in accordance with Section 3.02 (i) if such Claims were Allowed Claims on the Effective Date in the full amount asserted (or in an amount as otherwise stipulated or agreed to between the Debtors or Liquidating Debtors (as applicable) and any Holder(s) of such Claim(s) (and any such stipulation or agreement shall be subject to the reasonable consent of the Creditors' Committee or the Oversight Committee (as applicable and to the extent not disbanded), as the case may be, such consent not to be unreasonably withheld)), or (ii) if any such Claim has been estimated or otherwise Provisionally Allowed by the Bankruptcy Court, in such estimated or Provisionally Allowed amount, whichever is less.

       1.56    "**Holdback Amount**" means the sum of the aggregate amounts withheld by the Debtors as of the Effective Date as a holdback on payment of Professional Claims pursuant to the Interim Compensation Order.

       1.57    "**Holder**" means a holder of a Claim against or Interest in the Debtors.

       1.58    "**Impaired**" means "**impaired**", as defined in section 1124 of the Bankruptcy Code.

       1.59    "**Initial Distribution Date**" means the date on which the Distribution Agent makes an initial distribution to Holders of Allowed Claims, which date shall occur as soon as reasonably practicable but in no event later than thirty-five (35) calendar days after the Effective Date.

       1.60    "**Insurance Contract**" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors, and all agreements, documents or instruments relating thereto, including, without limitation, D&O Policies and any other insurance policies issued at any time providing directors and officers coverage to the Debtors and such D&O Policies that may cover any director, officer, member or manager.

**1.61** "**Insurer**" means any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof, including, without limitation, the D&O Insurers.

**1.62** "**Intercompany Claim**" means a Claim held by a Debtor against another Debtor.

**1.63** "**Interest**" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor or direct or indirect subsidiary of a Debtor, including all shares, common stock or units, preferred stock or units, or other instrument evidencing any fixed or contingent ownership interest in any Debtor or any direct or indirect subsidiary of a Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor or direct or indirect subsidiary of a Debtor, whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date.

**1.64** "**Interim Compensation Order**" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* entered by the Bankruptcy Court on November 25, 2019 at Docket No. 301 in the Chapter 11 Cases, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

**1.65** "**Latex Trust**" means The Latex Foam International Liquidating Trust established in connection with the bankruptcy cases filed in the Bankruptcy Court for the District of Connecticut on May 30, 2014, jointly administered under Case No. 14-50845.

**1.66** "**LFIH**" means Latex Foam International Holdings, LLC.

**1.67** "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.68** "**Liquidating Debtors**" means the Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

**1.69** "**Litigation and Other Recoveries**" mean net recoveries from any Causes of Action or other asset disposition(s) and/or receipt(s) of additional Cash at any Estates.

**1.70** "**Net Distributable Assets**" means all of the Cash held by the Debtors' Estates on each Distribution Date, including but not limited to any Cash in any bank accounts of the Debtors, as shall be increased by any Litigation and Other Recoveries, and the net Cash proceeds received or to be received from the wind-down and dissolution of assets of the Debtors; provided, however, that the Net Distributable Assets shall be reduced by the amounts used to fund Allowed Professional Claims, Allowed Administrative and Priority Claims and fees expenses incurred by the Plan Administrator and his professionals and the Oversight Committee and its professionals, as well as any other expenses of the Liquidating Debtors.

**1.71** "**OC Indemnified Parties**" has the meaning ascribed to such term in Section 5.13 of the Plan.

**1.72** "**Other Priority Claim**" means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority of payment as set forth in section 507(a) of the Bankruptcy Code.

**1.73** "**Other Secured Claim**" means a Claim, to the extent it is unpaid as of the Effective Date and (i) secured by a Lien on property of a Debtor's Estate, which Lien is valid, perfected and enforceable pursuant to applicable law or by a Final Order, to the extent of the value of the applicable creditor's interest in such Estate's interest such property, or (ii) secured by the amount of any rights of setoff of the Holder thereof under section 553 of the Bankruptcy Code, in each case, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.74** "**Oversight Committee**" has the meaning ascribed to such term in Section 5.13 of the Plan.

**1.75** "**Periodic Distribution Date**" means, as applicable, (a) the first Business Day occurring 90 days after the Initial Distribution Date, (b) subsequently, the first Business Day occurring 90 days after the immediately preceding Periodic Distribution Date, (c) with respect to excess Cash in the Professional Claims Reserve, not later than the first Business Day occurring 30 days after adjudication of all final fee applications in respect of Professional Claims and (d) with respect to excess Cash in the Administrative and Priority Claims Reserve, not later than the first Business Day occurring 20 days after the payment of all Allowed Administrative and Priority Claims.

**1.76** "**Petition Date**" means August 8, 2019, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

**1.77** "**Plan**" means this joint plan of liquidation for the Debtors, including all appendices, exhibits, schedules, and supplements hereto, as it may be altered, amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof, which shall be in form and substance acceptable to the proponents of the Plan.

**1.78** "**Plan Administrator**" means Chip Hoebeke of the Rehmann company, or such Entity acceptable to the proponents of the Plan and approved by the Bankruptcy Court pursuant to the Confirmation Order to administer the Plan in accordance with the terms of the Plan and to take such other actions as may be consistent with the Plan, and any successor thereto. The Plan Administrator is the administrator and conservator of the Debtors' estates and assignee of the Causes of Action.

**1.79** "**Plan Administrator Professionals**" means the agents, financial advisors, attorneys, consultants, independent contractors, representatives and other professionals of the Plan Administrator (including, without limitation, the Plan Administrator's firm Rehmann LLC) and the Liquidating Debtors, in their capacities as such.

**1.80** "**Plan Termination Date**" shall have the meaning ascribed to such term in Section 5.09(c) of the Plan.

**1.81** "**Priority Tax Claim**" means any Claim of a Governmental Unit entitled to priority of payment under section 507(a)(8) of the Bankruptcy Code.

**1.82** "**Pro Rata Share**" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claims or Allowed Interests under the Plan.

**1.83** "**Professional**" means any Entity retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.84** "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.85** "**Professional Claim Estimate**" means the sum of (a) the Holdback Amount, (b) the billed but unpaid fees and expenses of Professionals as of the Effective Date, and (c) the unbilled fees and expenses of Professionals reasonably estimated pursuant to Section 2.02(b) of the Plan attributable to fees and expenses to be incurred through the Effective Date; *provided, however*, that if a Professional does not provide an estimate pursuant to Section 2.02(b) of the Plan, the proponents of the Plan may estimate the unbilled fees and expenses of such Professional incurred as of the Effective Date, and the sum of clauses (a), (b), and (c) above and the total amount so estimated shall comprise the Professional Claim Estimate.

**1.86** "**Professional Claims Reserve**" means the account to be established on the Effective Date and maintained by the Debtors or the Liquidating Debtors, as the case may be, into which Cash equal to the Professional Claim Estimate (or such other amount agreed to by the Professionals) shall be deposited by the Debtors on the Effective Date to fund Allowed Professional Claims of Professionals employed by the Debtors and the Creditors' Committee.

**1.87** "**Provisionally Allowed**" means a Disputed Claim or Interest (a) that has been deemed temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018, or (b) the maximum amount of which has been estimated pursuant to Bankruptcy Code section 502(c) and the procedures set forth in Section 7.05 of the Plan; *provided, however*, that, if a Claim or Interest has been subject to multiple such estimation or temporary allowance proceedings, the Provisionally Allowed amount shall refer to the lowest amount established in any such proceedings, unless the Bankruptcy Court orders otherwise.

**1.88** "**Reclamation Claim**" means any Claim for the reclamation of goods delivered to the Debtors and asserted under section 546(c) of the Bankruptcy Code.

**1.89** "**Rejection Damages Claim**" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

1.90    "**Reserved Claims**" has the meaning set forth in Section 5.10(b) of the Plan.

1.91    "**Sale**" mean the sale authorized under the Sale Order.

1.92    "**Sale Order**" means the *Order Authorizing And Approving (I) The Sale Of Substantially All Of The Debtors' Assets To Artilat NV Free And Clear Of Interests And (II) Related Relief* entered by the Court on June 17, 2020 in the Chapter 11 Cases at Docket No. 606 granting the Sale Motion; which authorized the Sale to Artilat NV.

1.93    "**Schedule of Assumed Executory Contracts**" means the schedule of certain Executory Contracts to be assumed by the Debtors pursuant to the Plan, along with the proposed Cure Amount, if any, with respect to each such Executory Contract, in the form filed as **Exhibit C** hereto, as the same may be amended, modified, or supplemented from time to time.

1.94    "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.95    "**Schedules**" means the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

1.96    "**Section 503(b)(9) Claim**" means any Claim asserted under section 503(b)(9) of the Bankruptcy Code equal to the value of any goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the Debtors' ordinary course of business.

1.97    "**Subordinated Claim**" means any (i) Claim that is subject to subordination under section 510 of the Bankruptcy Code, or (ii) Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive damages, or otherwise not predicated upon compensatory damages, and that would be subordinated in a chapter 7 case pursuant to section 726(a)(4) of the Bankruptcy Code or otherwise.

1.98    "**Tax Information**" means any information relating to the tax obligations of the Debtors or the Liquidating Debtors as determined to be needed by the Debtors or the Plan Administrator or Distribution Agent, as applicable, including, without limitation, a Form W-8, a Form W-9, and information or certifications from brokers for Holders of Interests in LFIH holding in street name regarding the identity of such Holders and the number of Interests held by such Holders as of the Confirmation Date.

1.99    "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated and/or cashed such check; (b) given notice to the Liquidating Debtors of an intent to accept a particular distribution; (c) responded to the Debtors', the Liquidating Debtors' or the Plan Administrator's (or the Plan Administrator's

designee's), as applicable, request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

       **1.100** "**Unexpired Lease**" means a lease of nonresidential real property to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

       **1.101** "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

       **1.102** "**Voting Deadline**" means the date and time established by order of the Bankruptcy Court as the deadline for ballots to be received in connection with voting on the Plan.

       **B.**    **Rules of Interpretation.** For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter shall include the masculine, feminine, and neuter; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (f) the words "herein," "hereunder," "hereto," and the like refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control; (j) to the extent this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control; (k) references to "shares," "shareholders," "directors," and/or "officers" shall also include "membership units," "members," "managers," or other functional equivalents, as applicable, as such terms are defined under the applicable state limited liability company or alternative comparable laws, as applicable; and (l) any immaterial effectuating provision may be interpreted by the Liquidating Debtors in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

       **C.**    **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

       **D.**    **Reference to Monetary Figures.** All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

       **E.**    **Exhibits or Schedules.** All Exhibits and Schedules are incorporated into and are part of this Plan as if set forth in full herein and such Exhibits and Schedules shall be filed with the Bankruptcy Court on or before the Effective Date.

# ARTICLE II

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

**Section 2.01.** **Administrative Claims**. Except to the extent that the Creditors' Committee, the Latex Trust, the Debtors or the Plan Administrator, and a Holder of an Allowed Administrative Claim agree to a less favorable treatment, a Holder of an Allowed Administrative Claim (other than a Professional Claim, which shall be subject to Section 2.02 of this Plan) shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim either (a) on the later of (i) the Initial Distribution Date or (ii) the first Periodic Distribution Date occurring after the later of (1) 30 days after the date when the Administrative Claim becomes an Allowed Administrative Claim; or (2) 30 days after the date when the Administrative Claim becomes payable pursuant to any agreement between the Debtors or the Plan Administrator and the Holder of the Administrative Claim; or (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; *provided, however*, that other than the Holder of (w) a Professional Claim, (x) an Administrative Claim Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (y) an Administrative Claim that is not Disputed and arose in the ordinary course of business and was paid, or (z) an Administrative Claim arising under chapter 123 of title 28 of the United States Code, the Holder of any Administrative Claim shall have filed a proof of Claim form no later than the Administrative Claim Bar Date and such Claim shall have become an Allowed Claim. Except as otherwise provided herein and as set forth in Section 2.02 of this Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form, with the Bankruptcy Court and served on counsel for Plan Administrator no later than the Administrative Claim Bar Date. Any request for payment of an Administrative Claim pursuant to this Section 2.01 that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Debtors or the Plan Administrator. The Plan Administrator may settle any Administrative Claim without further Bankruptcy Court approval. In the event that the Liquidating Debtors or the Plan Administrator object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. For the avoidance of doubt, any payments made by the Distribution Agent on account of Allowed Administrative Claims (other than Professional Claims) shall be paid from the Administrative and Priority Claims Reserve. Notwithstanding the foregoing, if the Plan Administrator does not have sufficient Cash at the times set forth above in this paragraph, the Plan Administrator shall pay such Claims within 30 days after the Plan Administrator secures Litigation and Other Recoveries sufficient to pay such Claims.

**Section 2.02.** **Professional Claims**.

(a)     *Final Fee Applications*. All final requests for payment of Professional Claims must be filed no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and

prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

(b)    *Payment of Interim Amounts and Fee Estimates*. Following the Effective Date, the Liquidating Debtors shall continue to comply with the Interim Compensation Order with respect to amounts owing to Professionals for the period from the Petition Date through the Effective Date.  No later than two days prior to the Effective Date, each Professional shall estimate fees and expenses due for periods that have not or will not have been billed as of the Effective Date and shall deliver such estimate to the proponents of the Plan and such estimate shall be included in the Professional Claim Estimate.

(c)    *Professional Claims Reserve*. On the Effective Date, the Debtors shall fund the Professional Claims Reserve with Cash equal to the aggregate Professional Claim Estimate for all Professionals of the Debtors and Creditors' Committee, or such other amounts as may be agreed to by the Debtors and the Creditors' Committee.  The Professional Claims Reserve shall be held and maintained in trust by the Debtors, the Liquidating Debtors or the Plan Administrator for all Professionals with respect to whom fees have not yet been Allowed or paid pursuant to the Interim Compensation Order. The funds in the Professional Claims Reserve shall not be considered property of the Debtors, the Liquidating Debtors, the Plan Administrator, or the Estates, as applicable. Following any payments from the Professional Claims Reserve as set forth in Section 2.02(b) above, the remaining amount of Professional Claims owing to the Professionals shall be paid to such Professionals from the Professional Claims Reserve when such Claims are finally Allowed by the Bankruptcy Court.  Notwithstanding anything in this paragraph, nothing herein shall alter the Court's ability to fashion a remedy consistent with prior interim fee orders entered by the Court.

(d)    *Substantial Contribution Claims*. Section 503(b) of the Bankruptcy Code provides for payment of compensation to creditors, indenture trustees, and other Persons making a "substantial contribution" to a chapter 11 case, and to attorneys for, and other professional advisors to, such Persons. Requests for such compensation must be approved by the Bankruptcy Court after notice and a hearing at which time parties in interest may participate, and, if appropriate, object to such requests. If granted by the Court, such allowed fees and expenses shall only be paid from Net Available Proceeds after the full satisfaction and payment to all Allowed fees and expenses of Professionals retained by the Debtors or the Committee.

(e)    *Post-Effective Date Retention*. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Plan Administrator shall be permitted to employ and pay Professionals in the exercise of its business judgment (including the fees and expenses incurred by professionals in preparing, reviewing, prosecuting, defending, or addressing any issues with respect to final fee applications).

Any services performed or expenses incurred by any Professional on behalf of the Liquidating Debtors, the Plan Administrator, the Committee, or the Oversight Committee with respect to this Case after the Effective Date shall not be subject to the prior review and approval of the Bankruptcy Court.  All invoices of Liquidating Debtors, the Plan Administrator, the Committee, or the Oversight Committee arising after the Effective Date shall be remitted directly to the Plan

Administrator.  The Plan Administrator shall pay, from any Net Available Assets, the portion not objected to in accordance with the terms of the invoice.

**Section 2.03.    Priority Tax Claims**. On the later of (a) the Initial Distribution Date or (b) the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when a Priority Tax Claim becomes an Allowed Priority Tax Claim or (ii) 30 days after the date when a Priority Tax Claim becomes payable pursuant to any agreement between the Debtors (or the Plan Administrator) and the Holder of such Priority Tax Claim, except to the extent that the Debtors (or Plan Administrator) and a Holder of an Allowed Priority Tax Claim agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Priority Tax Claim, Cash in an amount equal to the amount of such Allowed Priority Tax Claim. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. For the avoidance of doubt, any payments made by the Plan Administrator on account of Allowed Priority Tax Claims shall be paid from the Administrative and Priority Claims Reserve. Notwithstanding the foregoing, if the Plan Administrator does not have sufficient Cash at the times set forth above in this paragraph, the Plan Administrator shall pay such Claims within 30 days after the Plan Administrator secures Litigation and Other Recoveries sufficient to pay such Claims.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**Section 3.01.    Classification of Claims and Interests**.

(a)    The Plan is premised on and constitutes constitute a substantive consolidation of the Debtors' Estates. Classes that are not applicable as to a particular Debtor shall be eliminated as set forth more fully in Section 4.03 of the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article II above.

A Claim or Interest is placed in a particular Class for all purposes, including voting, Confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided, however*, that a Claim or Interest is placed in a particular Class for the purpose of voting on the Plan and, to the extent applicable, receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

Claims and Interests are divided into the numbered Classes set forth below:

| CLASS | CLAIM OR INTEREST | STATUS | VOTING RIGHTS |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims against all Debtors | Impaired | Entitled to Vote |
| 4 | Subordinated Claims Against all Debtors | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | Interests in all Debtors | Impaired | Deemed to Reject |

**Section 3.02.**     **Treatment and Voting of Claims and Interests**.

(a)     *Class 1 – Other Priority Claims*

(i)     *Classification*. Class 1 consists of all Other Priority Claims.

(ii)     *Treatment*. Except as otherwise provided in and subject to Section 8.04 of this Plan, and except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Other Priority Claim, each such Holder of an Allowed Other Priority Claim shall be paid in full in Cash on the later of (A) the Initial Distribution Date, (B) the first Periodic Distribution Date occurring after the later of (1) 30 days after the date when an Other Priority Claim becomes an Allowed Other Priority Claim or (2) 30 days after the date when an Other Priority Claim becomes payable pursuant to any agreement between the Debtors (or the Plan Administrator) and the Holder of such Other Priority Claim (C) or 30 days after the Plan Administrator secures Litigation and Other Recoveries sufficient to pay such Claims.

(iii)     *Voting*. Class 1 is Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan.

(b)     *Class 2 – Other Secured Claims*

(i)     *Classification*. Class 2 consists of all Other Secured Claims.

(ii)     *Treatment*. Except as otherwise provided in and subject to Section 8.04 of this Plan, and except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Other Secured Claim, each such Holder of an Allowed Other Secured Claim shall, at the option of the Plan Administrator, (i) be paid in full in Cash in an amount equal to such Allowed Other Secured Claim, (ii) receive the net proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the interest of the Holder of such Allowed Other Secured Claim in such collateral, or (iii) receive the collateral securing such Allowed Other Secured Claim, in each case of (i), (ii), or (iii) on the later of (A) the Initial Distribution Date or (B) the first Periodic Distribution Date occurring after the later of (1) 30 days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (2) 30 days after the date when such Other Secured Claim

becomes payable pursuant to any agreement between the Debtors (or the Plan Administrator) and the Holder of such Other Secured Claim; *provided, however*, that nothing in this Section 3.02 or elsewhere in this Plan shall preclude the Debtors or the Plan Administrator, as applicable, from challenging the validity of any alleged Lien on any asset of the Debtors or the value of the property that secures any alleged Lien.

(iii)    *Voting*. Class 2 is Unimpaired, and Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan.

(c)    *Class 3 – General Unsecured Claims Against the Debtors*

(i)    *Classification*. Class 3 consists of all General Unsecured Claims against the Debtors.

(ii)    *Treatment*.  Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtors agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed General Unsecured Claim against the Debtors, on the Initial Distribution Date and each applicable Periodic Distribution Date thereafter, each Holder of an Allowed General Unsecured Claim against the Debtors shall receive its Pro Rata Share of the Net Distributable Assets up to the full principal amount of such Allowed Claim.  The Claim filed by the Latex Trust shall be Allowed as a general unsecured claim in the amount of $9,000,000.00 and except as may be allowed by Section 2.02(d) the Latex Trust shall have no other Claim against the Debtors and Fed.R.Bankr. Pro. 3008 shall not be applicable to this Allowed Claim.

(iii)    *Voting*. Class 3 is Impaired, and Holders of General Unsecured Claims against the Debtors are entitled to vote to accept or reject the Plan.

(d)    *Class 4 – Subordinated Claims Against the Debtors*

(i)    *Classification*. Class 4 consists of all Subordinated Claims against the Debtors.

(ii)    *Allowance*. Notwithstanding anything to the contrary herein, a Subordinated Claim against the Debtors, if any such Claim exists, may only become Allowed by Final Order.

(iii)    *Treatment*.  Each Holder of an Allowed Subordinated Claim (if any) against the Debtors shall not receive any distribution or other property on account of such Claim.

(iv)    *Voting*. Class 4 is Impaired, and Holders of Subordinated Claims against the Debtors are deemed to have rejected the Plan.

(e)    *Class 5 – Intercompany Claims*

(i)    *Classification*. Class 5 consists of all Intercompany Claims.

(ii)    *Treatment*. On the Effective Date, all Intercompany Claims shall be eliminated and extinguished and the Holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Claims, and such Claims will be deemed waived and released, provided, however, that nothing herein shall eliminate the Debtors' rights to distributions from any of their non-Debtor Affiliates on account of the Debtors' equity interests in any non-Debtor Affiliate.

(iii)    *Voting*. Class 5 is Impaired, and Holders of Allowed Intercompany Claims are deemed to have rejected the Plan.

(f)    *Class 6 – Interests in the Debtors*

(i)    *Treatment*. On the Effective Date, Interests in the Debtors, including preferred and common stock, shall be deemed automatically cancelled, released, and extinguished without further action by the Debtors or the Plan Administrator, and without further distribution; provided that one share of common stock in LFIH (and or LFI) will be issued and transferred to and vested with full ownership and control with the Plan Administrator for purposes of administering the wind-down of LFIH and the remaining Liquidating Debtors as may be required; provided, further, that the capital structure shall be preserved for administrative purposes only.

(ii)    *Voting*. Class 6 is Impaired, and Holders of Allowed Interests in the Debtors are deemed to have rejected the Plan.

**Section 3.03.    Entrepreneur Growth Capital, LLC.**

(a)    Any and all Claims of Entrepreneur Growth Capital, LLC ("EGC") against the Debtors, including its Claim No. 22 Filed on October 17, 2019, have been satisfied in full pursuant to the *Order Granting Entrepreneur Growth Capital, LLC's Motion For Payment Of Secured Creditor Claim And Fee Application* (the "EGC Order"), entered by the Bankruptcy Court on July 31, 2020 [Docket No. 670]. Accordingly, EGC shall not be entitled to any other or further distributions from the Debtors or their Estates. For avoidance of doubt, to the extent the EGC Order is reversed or otherwise modified and such reversal or modification results in EGC having received inappropriate payments, the amount of such inappropriate payments shall be returned by EGC to the Plan Administrator no less than ten business days from the date of such determination.

## ARTICLE IV

## ACCEPTANCE

**Section 4.01.    Classes Entitled to Vote**. Class 3 is Impaired and is entitled to vote to accept or reject this Plan. By operation of law, Classes 1 and 2 are Unimpaired and are conclusively presumed to have accepted this Plan and, therefore, are not entitled to vote. By operation of law, Classes 4, 5, and 6 are deemed to have rejected this Plan and are not entitled to vote.

**Section 4.02.** **Acceptance by Impaired Classes**. An Impaired Class of Claims shall have accepted this Plan if (a) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (b) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**Section 4.03.** **Elimination of Classes**. To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation Hearing for all Debtors or with respect to any particular Debtor shall be deemed to have been deleted from this Plan for all Debtors or for such particular Debtor, as applicable, for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**Section 4.04.** **Reserved**.

**Section 4.05.** **Cramdown**. To the extent necessary, the proponents of the Plan shall request Confirmation of this Plan under section 1129(b) of the Bankruptcy Code. The proponents of the Plan reserve the right to modify, amend, or withdraw this Plan, with respect to all Debtors or any individual Debtor, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

## MEANS OF IMPLEMENTATION OF THE PLAN

**Section 5.01.** **Substantive Consolidation**. This Plan contemplates and is predicated upon the deemed substantive consolidation of the Estates and Chapter 11 Cases of each of the Debtors.

On the Effective Date, each Claim filed or to be filed against (or Allowed against) any Debtor shall be deemed a single Claim against and a single obligation of the Debtors for distribution purposes only and the claims register shall be updated accordingly. This limited substantive consolidation effected pursuant to this Plan shall not otherwise affect the rights of any Holder of any Claim.

Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(A)(5) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of the substantive consolidation of the Estates for the purposes of confirming and consummating the Plan, including but not limited to voting, confirmation and Plan distributions. Accordingly, the assets and liabilities of each Debtor will be deemed the assets and liabilities of a single, consolidated entity, LFI, (b) each and every non-contingent, liquidated, non-disputed Claim listed on the Schedules and/or filed in the Chapter 11 Cases against any of the Debtors shall be considered filed against the consolidated Debtors and shall be considered one Claim against and obligation of the consolidated Debtors on and after the Effective Date, (c) all joint obligations of two or more of the Debtors and all multiple Claims against such entities on account of such joint obligations shall be considered a single Claim against the Debtors, (d) all

guarantee by any of the Debtors of the obligations of any other Debtors arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any of the Debtors and any guaranty thereof by any other Debtors and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors, and (e) all Intercompany Claims between and among the Debtors shall be cancelled and extinguished.

Such deemed consolidation shall not, however, (other than for purposes related to funding Distributions under the Plan) affect (a) the legal and organizational structure of the Debtors, (b) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed, assumed and assigned, or rejected, (c) any agreements entered into by the Liquidating Debtors on or after the Effective Date, (d) the Debtors or Liquidating Debtors or Plan Administrator's ability to commence and prosecute any Causes of Action against any Entity as if there was no substantive consolidation.

### Section 5.02.    Post-Effective Date Governance and Dissolution of Debtors.

Immediately following the occurrence of the Effective Date, (a) the respective boards of directors and/or manager of each of the Debtors shall be terminated and the members of the boards of directors of the Debtors shall be deemed to have resigned, (b) the Plan Administrator shall be appointed as the sole director and/or manager of each of the Liquidating Debtors (to the extent such Debtors are not being dissolved as of or in connection with the Effective Date) and (c) the Debtors shall continue to exist as the Liquidating Debtors after the Effective Date in accordance with the laws of the respective states of incorporation of each of the Debtors and pursuant to their respective certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except if and to the extent such organizational documents are amended under the Plan, including for the limited purposes of liquidating all of the assets of the Estates, making distributions in accordance with the Plan, reducing the size of boards of directors or the number of managers, and performing such obligations under the Sale Orders as are required to be performed, until such time as the Plan Administrator reasonably concludes such performance is complete or no longer required, and such other activities as are ancillary, necessary or convenient to the foregoing and the implementation of this Plan.

On the Effective Date, and without further order of the Bankruptcy Court, the Debtors or the Plan Administrator, on behalf of the Liquidating Debtors, may execute and file documents and take all other actions as they deem appropriate relating to the foregoing corporate actions under applicable state laws and, in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect any necessary corporate changes of the Debtors as provided herein, without the payment of any fee, tax or charge and without the need for the filing of reports or certificates.

Moreover, on and after the Effective Date, each Debtor (i) shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing or other authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

As soon as practicable after the conclusion of all litigation relating to the Debtors, the Plan Administrator shall (i) file a certificate stating that the assets of the Debtors' Estates have been liquidated; (ii) file the necessary paperwork in the relevant states of incorporation of each of the Liquidating Debtors to effectuate the dissolution of the Liquidating Debtors in accordance with the laws of such jurisdiction; and (iii) upon completion of all duties pursuant to the Plan, resign as the sole officer and manager, as applicable, of the Liquidating Debtors.  Upon the filing of certificate(s) described in clause (i) of the preceding sentence, the Debtors and/or Liquidating Debtors (other than LFI) shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith.

      **Section 5.03.**      **Causes of Action**.

On the Effective Date, all Causes of Action belonging to the Debtors, the Creditors' Committee, or the Latex Trust shall be assigned to and vest in the Plan Administrator.  For the avoidance of doubt, all derivative Causes of Action that have been, or may be, brought, including any pending or future derivative Causes of Action against officer, directors, members or professionals of the Debtors, shall be assigned to and vest in the Plan Administrator on the Effective Date.  As assignee of such Claims, the Plan Administrator shall have the authority to determine, for each pending derivative action, whether to dismiss such action or to be deemed the plaintiff in such matter with respect to the pending derivative action on behalf of the Debtors' Estates or otherwise. Any recovery from Causes of Action that vest in the Plan Administrator on the Effective Date shall become available for *pro rata* distribution and to increase the Net Distributable Assets.  Notwithstanding anything to the contrary herein, the Plan Administrator shall control the Causes of Action, including the investigation, prosecution and disposition of same, and any commencement, settlement or dismissal of any such Cause of Action shall be subject to reasonable consent of the Oversight Committee (if any).

      **Section 5.04.**      **General Settlement of Claims and Interests**. Pursuant to section 1123 of the Bankruptcy Code, the Plan incorporates the compromise and settlement (the "Plan Settlement") of numerous debtor-creditor issues designed to achieve an economic resolution of Claims against the Debtors and an efficient resolution of these Chapter 11 Cases, including, among other things, the settlement of a number of potential issues such as allocation of Assets and expenses among the Estates, the nature, amount and allowability of the Intercompany Claims, and substantive consolidation of the Debtors' Estates.  The Confirmation Order will serve to, among other things, approve the Plan Settlement under section 1123 of the Bankruptcy Code, and will contain findings that the compromises and settlements under the Plan Settlement are in the best interests of the Debtors, their Estates, their creditors, and other parties-in-interest, and are fair, equitable, and well within the range of reasonableness and otherwise satisfy the requirements of Bankruptcy Code.  Each provision of the Plan Settlement shall be deemed non-severable from each other and from the remaining terms of the Plan.  For the avoidance of doubt, this paragraph applies to pre Effective Date settlements only.

Accordingly, on the Effective Date, and in consideration for the classification, distributions, and other benefits provided under the Plan and the Plan Settlement, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests or

Causes of Action that are subject to compromise and settlement, injunctions, or exculpation are otherwise stayed or terminated pursuant to the terms of the Plan.

**Section 5.05.    Plan Funding**. Distributions under this Plan and the Plan Administrator's post-Effective Date operations will be funded from the Debtors' Cash on hand and proceeds of the Sales held by the Estates as of the Effective Date, and proceeds of other asset dispositions and net proceeds of Litigation and Other Recoveries.

**Section 5.06.    Certificate of Incorporation and By-laws**. The certificate and articles of incorporation, certificate of conformation, by-laws, limited liability company agreement and other relevant organizational documents of each of the Liquidating Debtors may be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and may include, among other things, a provision (a) prohibiting the issuance of non-voting equity securities under section 1123(a)(6) of the Bankruptcy Code and (b) limiting the activities of the Liquidating Debtors to matters authorized under the Plan, and the Sale Order.

**Section 5.07.    Cancellation of Certain Instruments and Agreements**. Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, options, warrants, rights, and other instruments evidencing an ownership interest in the Debtors, contractual, legal, equitable, or otherwise, to acquire any of the foregoing, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Interests in LFIH, shall be automatically canceled and surrendered without any need for further action, notice, deed or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors or the Liquidating Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full.

**Section 5.08.    The Plan Administrator**.

(a)    Appointment of the Plan Administrator

From and after the Effective Date, Chip Hoebeke or such other individual designated by the plan proponents shall serve as the Plan Administrator pursuant to the Plan, until the resignation or discharge and the appointment of a successor Plan Administrator in accordance with the Plan.

The appointment of the Plan Administrator shall be deemed approved upon entry of the Confirmation Order, and such appointment shall be effective as of the Effective Date. The Plan Administrator shall, among other things, have the power and perform all of the duties, responsibilities, rights and obligations set forth in the Plan.

(b)    Rights, Powers, and Duties of the Liquidating Debtors and the Plan Administrator

The Liquidating Debtors and the Plan Administrator shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan, which for the avoidance of doubt, shall include pursuing (or not pursuing) the Causes of Action and the investigation, prosecution and/or settlement or other disposition of such Causes of Action. The Plan Administrator shall seek to preserve and protect all applicable privileges of the Liquidating Debtors, as applicable, including any attorney-client privilege or work-product privilege

attaching to any documents or communications (whether written or oral) as set forth in more detail in Section 5.15 of the Plan. Such rights, powers and duties, which shall be exercisable by the Plan Administrator on behalf of the Liquidating Debtors and the Estates pursuant to the Plan shall include, among others:

       (i)     making distributions to Holders of Allowed Claims and Interests as provided for in the Plan;

       (ii)    administering, reconciling, objecting to, and settling or otherwise litigating to resolution all Claims, including Administrative Claims, Professional Claims, Priority Tax Claims, and Other Priority Claims (subject to the Administrative Claims Protocol set forth in Section 5.10(b) of the Plan), General Unsecured Claims and Subordinated Claims;

       (iii)   filing tax returns and paying taxes, and challenging disputing, negotiating and resolving the assessment of any of the foregoing by any foreign, domestic, federal, state, local or other taxing authority;

       (iv)   administering the Liquidating Debtors' 401(k) benefit plans;

       (v)    defending the Debtors and Liquidating Debtors in any litigation, including any governmental litigation(s) and/or investigations against or involving the Debtors or Liquidating Debtors;

       (vi)   prosecution and settlement of Causes of Action, including but not limited to certain specified Causes of Action identified on Exhibit A;

       (vii)  the wind-down and/or dissolution of the Liquidating Debtors;

       (viii)  the sale or other disposition of property of the Debtors; and

       (ix)   taking such other actions, or omitting to take such other actions, as the Plan Administrator shall reasonably determine are necessary, advisable or convenient in furtherance of the Plan and the discharge of its duties under the Plan.

     (c)     Compensation of the Plan Administrator

The Plan Administrator shall be compensate solely to the extent Net Available Assets are available after payment of all Administrative and Priority Claims, it being understood that as of the Effective Date the amount of $30,000 shall be set aside and made available for the Plan Administrator to cover the administration of the cases, with additional funds shall come from net litigation proceeds recovered by the Plan Administrator. Once the initial $30,000.00 of "seed money" has been expended, the Plan Administrator shall file statements outlining fees and expenses for each additional $15,000.00 requested in payment. The Plan Administrator's compensation, and that of his assisting staff, will be on an hourly basis as set forth on Exhibit A to the Disclosure Statement.

The payment of the fees and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the

approval of the Bankruptcy Court; *provided, however*, that any disputes related to such fees and expenses raised by the Creditors' Committee or the Oversight Committee (to the extent not disbanded), as applicable, shall be brought before the Bankruptcy Court.

(d)     Indemnification

The Liquidating Debtors shall indemnify and hold harmless (i) the Plan Administrator (in its capacity as such and as sole officer, director or member/manager of the Liquidating Debtors), (ii) additional individuals that may serve as officers or members/managers of the Liquidating Debtors, if any, and (iii) the Plan Administrator Professionals (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's fraud, criminal misconduct, legal malpractice, willful misconduct or gross negligence, with respect to the Liquidating Debtors or the implementation or administration of the Plan. To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefore). The indemnification provisions of the Plan shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of the Plan.

(e)     Revesting of Assets

Except as expressly provided elsewhere in this Plan, on the Effective Date, the property of each Debtor's Estate shall revest in the applicable Liquidating Debtor and be distributed according to this Plan, *provided, however*, all Causes of Action shall be deemed assigned to the Plan Administrator and distributed according to the Plan.

(f)     Subsequent Plan Administrator

Should the Plan administrator be discharged, resign or become incapacitated, a replacement Plan Administrator shall be appointed by the Oversight Committee and approved by the Court.

**Section 5.09.     Distributions to Holders of General Unsecured Claims**.

(a)     Initial Distributions

On the Initial Distribution Date, the Plan Administrator shall make, or shall make adequate reserves in the GUC Claims Reserve for, the distributions required to be made under the Plan to Holders of Allowed General Unsecured Claims. The Distribution Agent shall not

make any distributions to the Holders of Allowed General Unsecured Claims unless the Distribution Agent retains and reserves in the GUC Claims Reserve such amounts as are required under Section 8.04(c) of the Plan.

(b)    Interim Distributions

The Distribution Agent shall, subject to approval of the Oversight Committee (if still in existence), make interim distributions of Cash in accordance with this Plan (i) to Holders of Allowed General Unsecured Claims at least once each four-month period (to the extent practicable), unless the aggregate amount of such distributions, except for the last anticipated distributions, is $50.00 or less, and (ii) from the GUC Claims Reserve to Disputed General Unsecured Claims that become Allowed General Unsecured Claims.

(c)    Final Distributions

The Liquidating Debtors shall be dissolved and their affairs wound up and the Plan Administrator shall make the final distributions on the date when, in the reasonable judgment of the Plan Administrator (and, if still in existence, in consultation with the Oversight Committee), substantially all of the assets of the Liquidating Debtors have been liquidated and there are no substantial potential sources of additional Cash for distribution and all pending Claims are resolved and concluded. The date on which the Plan Administrator determines (in consultation with the Oversight Committee if still in existence) that all obligations under the Plan have been satisfied is referred to as the "Plan Termination Date".  On the Plan Termination Date, the Plan Administrator shall, to the extent not already done, request that the Bankruptcy Court enter an order closing any remaining Chapter 11 Cases.

**Section 5.10.    Accounts and Reserves.**

(a)    Professional Claims Reserve

On or before the Effective Date, the Debtors shall create and fund the Professional Claims Reserve in Cash in the amount of the Professional Claim Estimate. Subject to Section 5.10(d), the Cash so transferred shall not be used for any purpose other than to pay Allowed Professional Claims. Notwithstanding anything to the contrary, the Debtors, the Liquidating Debtors or the Plan Administrator (i) shall segregate and shall not commingle the Cash held in the Professional Claims Reserve and (ii) shall pay each Professional Claim of a Professional on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim, upon entry of a Final Order allowing such Claim. After all Professional Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid from the Professional Claims Reserve, any remaining Cash in the Professional Claims Reserve shall be released and transferred to the Liquidating Debtors.  Only Professionals employed in the Chapter 11 Cases by the Debtors and the Creditors' Committee, and whose retention and compensation has been approved by the Bankruptcy Court, shall be entitled to payment from the Professional Claims Reserve.

The Professionals employed by the Creditors' Committee shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities related to the preparation, filing and prosecution (subject to applicable law) of such

Professional's final fee applications.  Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

(b)     Administrative and Priority Claims Reserve

On or before the Effective Date, the Debtors, Liquidating Debtors or the Plan Administrator shall create and fund the Administrative and Priority Claims Reserve in Cash in the amount of the Administrative and Priority Claims Estimate.  On or before ten Business Days prior to the Effective Date, the Debtors will provide the Creditors' Committee and the Latex Trust with a schedule of estimated unpaid Administrative Claims, Priority Tax Claims and Other Priority Claims to be funded from the Administrative and Priority Claims Reserve (the "Administrative and Priority Claims Schedule").  On or before five Business Days prior to the Effective Date, the Creditors' Committee will provide the Debtors with a schedule which lists the individual Administrative Claims, Priority Tax Claims and Other Priority Claims set forth in the Administrative and Priority Claims Schedule over which the Oversight Committee shall reserve consent rights (collectively, the "Reserved Claims").  With respect to any Reserved Claim and any other Administrative Claim, Priority Tax Claim and Other Priority Claim that was not included in the Administrative and Priority Claims Schedule, such Claim shall only be Allowed (i) upon agreement of the Plan Administrator with the reasonable consent of the Oversight Committee (such consent not to be unreasonably withheld) or (ii) as determined by Final Order of the Bankruptcy Court or as otherwise Allowed to the extent no objection is raised to such Claim prior to the Claims Objection Deadline (the "Administrative Claims Protocol").  For the avoidance of doubt, the Administrative and Priority Claims Reserve shall be funded in the amount of the Administrative and Priority Claims Estimate, regardless of whether any Claims included in the Administrative and Priority Claims Estimate are Reserved Claims.  Until each Allowed Administrative and Priority Claim is paid in full, the Cash in the Administrative and Priority Claims Reserve shall not be used for any purpose other than to pay Allowed Administrative Claims (except Professional Claims, which shall be paid from the Professional Claims Reserve), Priority Tax Claims and Other Priority Claims, and, subject to Section 5.10(d), no payments on account of the foregoing Claims shall be made from any source other than the Administrative and Priority Claims Reserve.

The Plan Administrator (i) shall segregate and shall not commingle the Cash held in the Administrative and Priority Claims Reserve and (ii) shall pay each Administrative Claim (except Professional Claims, which shall be paid from the Professional Claims Reserve), Priority Tax Claim and Other Priority Claim, on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim.  After all Administrative Claims (including Professional Claims), Priority Tax Claims and Other Priority Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by the Plan Administrator.

(c)     GUC Claims Reserve

On or before the Initial Distribution Date, the Plan Administrator shall create one or more GUC Claims Reserve(s). On each Distribution Date, the Distribution Agent, as applicable, shall fund the GUC Claims Reserve(s) in Cash in the amount of the GUC Claims Reserve Amount. Subject to Section 5.10(d), no payments made on account of Disputed General Unsecured

Claims that become Allowed General Unsecured Claims after the Effective Date shall be made from any source other than the GUC Claims Reserve. After all Disputed Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid their respective Pro Rata distribution by the Distribution Agent, any remaining Cash in the GUC Claims Reserve(s) shall be released and transferred to the Liquidating Debtors.

(d)     Other Reserves and Modification to Reserves

The Plan Administrator may establish and administer any other necessary reserves that may be required under the Plan.

Additionally, and notwithstanding anything to the contrary contained in the Plan, the Plan Administrator may make transfers of money between the reserves established under the Plan to satisfy Claims and other obligations in accordance with the Plan, and may increase any reserve based on Allowed Administrative Claims or Allowed Priority Claims to the extent that the amounts originally funded into the reserves are insufficient to satisfy such Claims.

For the further avoidance of doubt, and notwithstanding anything herein to the contrary, all reserves established under the Plan shall not be construed as a cap or limitation on the allowance and payment of any Administrative Claims or Priority Claims.

**Section 5.11.     Exemption from Certain Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall be directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 5.12.     Preservation of Causes of Action**. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors and their Estates shall retain all of the Debtors' Causes of Action (including those Causes of Action set forth on an Exhibit hereto) and such retained Causes of Action of the Debtors shall be assigned to and vest in the Plan Administrator on the Effective Date.  The Plan Administrator may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or the dissolution of the Debtors. The Plan Administrator, subject to Section 5.13 but otherwise in its discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The Plan Administrator may pursue Causes of Action in accordance with the best interests of the beneficiaries of the Debtors' estates. **No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will pursue or not pursue any and all available Causes of Action. The Plan Administrator and Liquidating Debtors expressly reserve all rights to prosecute any and all Causes of**

**Action of the Debtors against any Entity, except as otherwise expressly provided in the Plan or to the extent released pursuant to other Orders of the Bankruptcy Court.** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or an order of the Bankruptcy Court, the Plan Administrator expressly reserves all of the Debtors' Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan.

Section 5.13.    **Oversight Committee**

(a)    As of the Effective Date, a post-confirmation committee to oversee certain actions of the Plan Administrator (the "Oversight Committee") shall be formed. The Oversight Committee shall be comprised of two members of the Creditors' Committee as of the Effective Date and one person designated by the Latex Trust.  Upon the death or resignation (or deemed resignation) of a member of the Oversight Committee, the remaining members of the Oversight Committee may fill the applicable vacancy on the Oversight Committee.  If all members of the Oversight Committee resign or are otherwise unwilling to remain on the Oversight Committee, the Oversight Committee shall be deemed dissolved.

After the Effective Date, and until the Oversight Committee is dissolved and discharged, the Plan Administrator shall provide quarterly reports to the Oversight Committee in connection with the wind-down of the Liquidation Debtors and first consult with and seek the reasonable consent of the Oversight Committee (such consent not to be unreasonably withheld) regarding any of the following:

(i)    the filing or commencement of any additional Causes of Action (other than objections to Claims or Interests) to the extent not commenced prior to the Effective Date;

(ii)    the settlement or resolution of any Claims or Causes of Action to the extent that the Plan Administrator proposes a settlement (including providing for an Allowed Claim) in the amount of $100,000 and above;

(iii)    the retention and compensation of Professionals; and

(iv)    changes to the reserves established under the Plan.

Additionally, the Plan Administrator will consult with the Oversight Committee with respect to any material issues regarding any tax, regulatory or other governmental filing(s) in connection with the wind-down of the Liquidating Debtors.

(b)    Plan Administrator Control/Dispute Resolution:  The Plan Administrator shall have complete control over the day-to-day decisions and operations of the Liquidating Debtors except as provided for in Section 5.13(a), and elsewhere in the Plan.  To the extent that the Oversight Committee and Plan Administrator disagree regarding a proposed action by, or course of conduct for, the Liquidating Debtors falling under Sections 5.13(a) above, prior to taking such proposed action or proceeding with such conduct, the matter shall be brought before the

Bankruptcy Court on the condition that the party seeking such Bankruptcy Court determination shall certify that the parties met and conferred (or had previously met and conferred) regarding such proposed action by or course of conduct in good faith and were unable to reach resolution. The Bankruptcy Court shall decide the dispute utilizing such standards and reasoning as the Bankruptcy Court deems appropriate under the circumstances.

(c)     The Oversight Committee shall have the rights to: employ and compensate professionals on behalf of the Oversight Committee, who shall be entitled to compensation from the Assets of the Liquidating Debtors upon presenting an invoice to the Plan Administrator.

(d)     Members of the Oversight Committee shall receive no compensation from the Debtors, the Liquidating Debtors or the Plan Administrator on account of their membership on the Oversight Committee except for reimbursement of their reasonable out of pocket expenses (which, for the avoidance of doubt, shall not include the fees or expenses of any professionals retained individually or independently by any member of the Oversight Committee); *provided, however*, that any member of the Oversight Committee appointed by the Latex Trust may charge the Latex Trust for his/her services). Upon the earlier to occur of (i) the dissolution of the Liquidating Debtors or (ii) the payment in full of Allowed General Unsecured Claims in Class 3 as provided in the Plan, the Oversight Committee shall be automatically disbanded and its members shall have no further duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation. The Oversight Committee may also be disbanded upon resignation of all of its members.

(e)     Indemnification: The Liquidating Debtors shall indemnify and hold harmless (i) the Oversight Committee, its members and the Oversight Committee's Professionals (collectively, the "OC Indemnified Parties") only in their respective capacities as such, from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions (adjudicated through a Final Order) resulting from such OC Indemnified Party's fraud, criminal misconduct, legal malpractice, willful misconduct or gross negligence, with respect to the Oversight Committee's implementation or administration of the Plan or its oversight of the Plan Administrator. These indemnification provisions shall remain available to and be binding upon any former member of the Oversight Committee or the decedent's estate of any former Oversight Committee member, and shall survive the termination of the Oversight Committee. Notwithstanding any entitlement to be indemnified or other protections afforded to them, the OC Indemnified Parties shall continue to enjoy their qualified immunity to the fullest extent provided by law.

**Section 5.14.**    **Insured Claims**. Notwithstanding anything to the contrary contained herein, to the extent any Insurance Contract(s) provides coverage with respect to any General Unsecured Claim or Subordinated Claim, the Holder of such Claim shall, without duplication, (a) be paid only to the extent of any available coverage under any applicable Insurance Contract(s), and (b) if such Claim is entitled to receive the treatment provided for in this Plan for Allowed General Unsecured Claims or Allowed Subordinated Claims, be paid only to the extent the applicable Insurance Contract(s) does not provide coverage with respect to any portion of the Claim. If the Holder of any such Claim has received payment under this Plan and under any

Insurance Contract that results in a double recovery, then (i) the Holder shall be required to return the amount received under the Plan, to the extent of such double recovery, to the Plan Administrator (for the benefit of the relevant Liquidating Debtor(s), and (ii) the Plan Administrator and relevant Liquidating Debtor(s) shall be entitled to commence legal action against such Holder, if necessary, to recover such double recovery in accordance with this Plan.

**Section 5.15.    Preservation of Privilege and Defenses**.

The Confirmation Order shall provide that, on the Effective Date, all of the Debtors' privileges and work product, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), related to Causes of Action, shall be maintained by the Plan Administrator, which will have exclusive authority to waive or not waive the Debtors' privileges in its sole discretion. The Confirmation Order shall further provide that nothing in the Plan (including this Section 5.15) or the Confirmation Order is intended to, does, or may be construed to expand the privileges or other protections against disclosure, if any, belonging to the Debtors as of the Effective Date, it being understood that the purpose of this Section 5.15 and any corresponding provisions in the Confirmation Order is to ensure that any privileges and other protections against disclosure existing as of the Effective Date are preserved and are not waived.

The Plan Administrator will seek to preserve and protect all applicable privileges and work product vested in the Liquidating Debtors and the Plan Administrator. The Plan Administrator's receipt of such information shall not waive any privileges and such privileges are preserved.    The Liquidating Debtors and the individual directors, officers or members/managers of the Debtors shall remain in control of all of their respective privileges (subject to the provisions of the foregoing paragraphs), and the Liquidating Debtors, and the individual directors, officers or members/ managers of the Debtors, each as applicable, retain the right to waive their own privileges prospectively.

**Section 5.16.    Books and Records**. On the Effective Date, all books and records of the Debtors (wherever or however stored, whether electronic or otherwise) that were not transferred to the purchaser under the Sale Order shall be transferred to the Liquidating Debtors and the Plan Administrator.

The Plan Administrator shall be free, in its discretion (subject to consultation with the Oversight Committee, to the extent not disbanded pursuant to Section 5.13) to abandon, destroy or otherwise dispose of any books and records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, upon reasonable notice to parties in interest, including relevant governmental entities.  With respect to any books and records that are not, in the view of the Plan Administrator, relevant for the continuing prosecution of any objections to Claims, defense of any potential Claims or actions against the Debtors or Liquidating Debtors, any Causes of Action, or the wind-down of the Debtors' Estates, the Plan Administrator shall be free, in its discretion (subject to consultation with the Oversight Committee, to the extent not disbanded pursuant to Section 5.13) to abandon, destroy or otherwise dispose of such books and records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other Order of the Bankruptcy Court and shall have no liability for same.

## ARTICLE VI

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**Section 6.01.** **Executory Contracts and Unexpired Leases to Be Rejected**. Upon the occurrence of the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts attached to the Plan; (ii) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; (iv) is an Insurance Contract; or (v) is otherwise assumed pursuant to the terms herein. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein.

(a)    *Preexisting Obligations to Debtors*. Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Liquidating Debtors, and the Plan Administrator expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts.

(b)    *Rejection Damages Claim Procedures*. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Bankruptcy Court no later than 30 days after the later of the Effective Date, the effective date of rejection, or the date notice of such rejection is transmitted by the Debtors or the Plan Administrator, as applicable, to the counterparty to such Executory Contract or Unexpired Lease. Any proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Liquidating Debtors, without the need for any objection by the Plan Administrator or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(c)    *Reservation of Rights*. Notwithstanding anything to the contrary herein, prior to the Effective Date, the Plan proponents may amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

**Section 6.02.** **Executory Contracts to Be Assumed**. Upon the occurrence of the Effective Date, each Executory Contract that is listed on the Schedule of Assumed Executory Contracts 6.02 shall be deemed assumed, in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Liquidating Debtors' assumption of such Executory Contract, then such provision shall be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to this Article VI of the Plan will revest in the Liquidating Debtors and be fully enforceable by the Plan Administrator on behalf of the Liquidating Debtors, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(a) *Modifications, Etc*. Unless otherwise provided in the Plan, each Executory Contract that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated pursuant to this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

(b) *Proofs of Claim Based on Assumed Contracts or Leases*. Any and all proofs of Claim based on Executory Contracts or Unexpired Leases that have been assumed or assumed and assigned in the Chapter 11 Cases, including hereunder, except proofs of Claim asserting Cure Amounts, pursuant to the order approving such assumption or assumption and assignment, including the Sale Order and the Confirmation Order, shall be deemed Disallowed and expunged from the Claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

(c) *Cure Proceedings and Payments*. With respect to each of the Executory Contracts assumed hereunder, the Debtors or the Plan Administrator shall designate a proposed Cure Amount, and the assumption of such Executory Contract shall be conditioned upon the disposition of all issues with respect to the Cure Amount. Except as otherwise set forth on the Schedule of Assumed Executory Contracts, the Cure Amount with respect to each of the Executory Contracts assumed hereunder is designated by the Debtors as zero dollars, subject to the determination of a different Cure Amount pursuant to the procedures set forth herein (including Section 6.02(e) below) and in the Cure Notices. Except with respect to Executory Contracts for which the Cure Amount is zero dollars, or for which the Cure Amount is in dispute,

the Cure Amount shall be satisfied by the Liquidating Debtors, if any, by payment of the Cure Amount in Cash within 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract without any further notice to or action, order, or approval of the Bankruptcy Court.

Any provisions or terms of the Executory Contracts to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by payment of the Cure Amount, or by an agreed-upon waiver of the Cure Amount. If there is a dispute regarding such Cure Amount, the ability of the Liquidating Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Debtors or the Plan Administrator, as applicable, and the counterparty to the Executory Contract; *provided, however*, that the Debtors or the Plan Administrator, as applicable, shall have the right either to reject or nullify the assumption of any Executory Contract after entry of a Final Order determining the Cure Amount or any request for adequate assurance of future performance required to assume such Executory Contract.

Assumption of any Executory Contract pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Amount, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time prior to the effective date of assumption, as applicable.

(d)    *Cure Notice*. No later than seven days before the Confirmation Hearing, the Debtors  or the Plan proponents shall serve upon counterparties to such Executory Contracts a Cure Notice that will (i) notify the counterparty of the proposed assumption of the applicable Executory Contract, (ii) list the applicable Cure Amount, if any, set forth on the Schedule of Assumed Executory Contracts, (iii) describe the procedures for filing objections to the proposed assumption of the applicable Executory Contract, (iv) describe the procedures for filing objections to the proposed Cure Amount of the applicable Executory Contract, and (v) explain the process by which related disputes will be resolved by the Bankruptcy Court. If no objection is timely received, (A) the non-Debtor party to the assumed Executory Contract shall be deemed to have consented to the assumption of the applicable Executory Contract and shall be forever barred from asserting any objection with regard to such assumption, and (B) the proposed Cure Amount shall be controlling, notwithstanding anything to the contrary in any applicable Executory Contract or other document as of the date of the filing of the Plan, and the non-Debtor party to an applicable Executory Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or the Liquidating Debtors, or the property of any of them.

(e)    *Cure Objections*. If a proper and timely objection to the Cure Notice or proposed Cure Amount was filed by the Cure Objection Deadline, the Cure Amount shall be equal to (i) the amount agreed to between the Debtors or Plan Administrator, as applicable, and the applicable counterparty or (ii) to the extent the Debtors or Plan Administrator and counterparty

do not reach an agreement regarding any Cure Amount or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure Amount and any related issues. Objections, if any, to the proposed assumption and/or Cure Amount must be in writing, filed with the Bankruptcy Court, and served in hard-copy form on the parties identified in the Cure Notice so that they are actually received by the Cure Objection Deadline.

(f)     *Hearing with Respect to Objections*. If an objection to the proposed assumption of an Executory Contract and/or to the proposed Cure Amount thereof is timely filed and received in accordance with the procedures set forth in Section 6.02(e) of the Plan, and the parties do not reach a consensual resolution of such objection, a hearing with respect to such objection shall be held at such time scheduled by the Bankruptcy Court or the Debtors or the Plan Administrator, as applicable. Objections to the proposed Cure Amount or assumption of an Executory Contract will not be treated as objections to Confirmation of the Plan.

(g)     *Reservation of Rights*. Notwithstanding anything to the contrary herein, prior to the Effective Date, the Plan proponents may amend their decision with respect to the assumption of any Executory Contract and provide a new notice amending the information provided in the applicable notice. In the case of an Executory Contract designated for assumption that is the subject of a Cure Amount objection that has not been resolved prior to the Effective Date, the Debtors or the Plan Administrator, as applicable, may designate such Executory Contract for rejection at any time prior to the payment of the Cure Amount, as set forth in Section 6.02(c) of the Plan.

**Section 6.03.     General Reservation of Rights**. Neither the exclusion nor inclusion of any contract or lease on the Schedule of Assumed Executory Contracts, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Liquidating Debtors, the Plan Administrator, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**Section 6.04.     Insurance Contracts**. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Confirmation Order, any bar date order or notice or claim objection order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, or requires a party to opt in to any releases, or any provision that sets a reserve): (a) all Insurance Contracts shall continue in effect after the Effective Date pursuant to their respective terms and conditions and shall be treated, to the extent necessary, as if assumed by the Plan Administrator on behalf of the Liquidating Debtors, and subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to sections 105 and 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estates; (b) all rights and obligations of the Debtors under any Insurance Contracts shall automatically become vested in the Liquidating Debtors (with such rights to be enforceable by the Plan Administrator on behalf of the Liquidating Debtors), unaltered and without necessity for further approvals or orders and nothing shall alter the legal, equitable or

contractual rights, obligations and defenses of the Debtors and the Insurers under the Insurance Contracts or modify the coverage provided thereunder or the terms and conditions thereof except that on and after the Effective Date, the Plan Administrator on behalf of the Liquidating Debtors, shall become and remain liable for all of the Debtors' obligations under the Insurance Contracts regardless of whether such obligations arise before or after the Effective Date and without the need or requirement for any Insurer to file a proof of Claim or Administrative Claim. For the avoidance of doubt, the Debtors or the Plan Administrator on behalf of the Liquidating Debtors, as applicable, shall retain the right, if any, to challenge any amounts owed under the Insurance Contracts in accordance with their terms; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Contracts, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Contracts.

Nothing in this Plan shall be deemed to impair any Entity's claim, if any, to proceeds of the D&O Policies or the priority of payment on such claim, if any, under the D&O Policies.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**Section 7.01.    Determination of Claims and Interests**. After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, including the Causes of Action retained pursuant to Section 5.12 of the Plan, except with respect to any Claim or Interest deemed Allowed under the Plan or other order of the Bankruptcy Court.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed (including to the extent no objection to such Claim or Interest is filed on or prior to the Claim Objection Deadline) or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties. For the avoidance of doubt, any Claim determined and liquidated pursuant to (a) an order of the Bankruptcy Court or (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination or any revision, modification, or amendment thereof as to which the time to appeal or seek review or rehearing has expired and no appeal or petition for

review or rehearing was filed or, if filed, remains pending) shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with this Plan.

Nothing contained in this Section 7.01 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Liquidating Debtors may have against any Entity in connection with or arising out of any Claim, including any rights under section 157(b) of title 28 of the United States Code.

**Section 7.02.    Claims Administration Responsibility.** Notwithstanding anything to the contrary herein, after the Effective Date, the Plan Administrator shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims, including, in each case, (i) filing, withdrawing, or litigating to judgment objections to Claims or Interests, (ii) settling or compromising any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court, and (iii) administering and adjusting the Claims register to reflect any such settlements or compromises, all without any further notice to or action, order, or approval by the Bankruptcy Court.

**Section 7.03.    Objections to Claims.** Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be served and filed on or before the Claims Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Plan Administrator and prior notice to the Oversight Committee but without further notice to any other party-in-interest). Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Plan Administrator effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto (or at the last known addresses of such Holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address); or (c) by either first class mail, postage prepaid, or email, on any counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

**Section 7.04.    Disallowance of Claims.** Except as otherwise agreed, any and all proofs of Claim filed after the applicable deadline for filing such proofs of Claim shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless any such late proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court.

Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Plan Administrator, or other parties-in-interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification. Nothing in this Plan shall preclude amendments to timely filed proofs of Claim to the extent permitted by applicable law.

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Plan Administrator allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed if (a) the Entity, on the one hand, and the Debtors or the Plan Administrator, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Section 7.05.    Estimation of Claims**. Before the Effective Date, the Debtors and after the Effective Date, the Plan Administrator, may (but are not required to) at any time request that the Bankruptcy Court estimate a Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of funding any applicable reserves), without prejudice to the Holder of such Claim's right to request that estimation should be for the purpose of determining the Allowed amount of such Claim, and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. All estimation procedures set forth in the Plan shall be applied in accordance with section 502(c) of the Bankruptcy Code. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

**Section 7.06.    No Interest on Disputed Claims**. Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, postpetition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest. Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

**Section 7.07.    Amendments to Claims**. On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Liquidating Debtors, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court and the bankruptcy clerk and/or the Plan Administrator is authorized to immediately expunge any such Claim.

# ARTICLE VIII

# PROVISIONS GOVERNING DISTRIBUTIONS

**Section 8.01.    Timing of Distributions for Allowed Claims**. Except as otherwise provided for herein (including as set forth in the Plan or ordered by the Bankruptcy Court, distributions under this Plan with respect to Allowed Claims shall be made on the later of (a) the Initial Distribution Date or (b) on the first Periodic Distribution Date occurring after the later of, (i) 30 days after the date when a Claim is Allowed or (ii) 30 days after the date when a Claim becomes payable pursuant to any agreement between the Debtors, the Liquidating Debtors, the Plan Administrator, and the Holder of such Claim; *provided, however*, that the Plan Administrator may make one-time distributions on a date that is not a Periodic Distribution Date.

**Section 8.02.    Currency**. Except as otherwise provided in the Plan or Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of the Effective Date at 4:00 p.m. prevailing Eastern Time, mid-range spot rate of exchange for the applicable currency as published in the next The Wall Street Journal following the Effective Date.

**Section 8.03.    Distribution Agent**. The Distribution Agent shall make all distributions required under this Plan, subject to the terms and provisions of this Plan. If the Distribution Agent is an independent third party designated to serve in such capacity, such Distribution Agent shall receive, without further Court approval, reasonable compensation from the Wind-Down Reserve for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses. No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties. The Distribution Agent shall be authorized and directed to rely upon the Debtors' books and records and, as applicable, the Plan Administrator's representatives and professionals in determining Allowed Claims not entitled to distributions under the Plan in accordance with the terms and conditions of this Plan. The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

**Section 8.04.    Distributions on Claims Allowed After the Effective Date**.

(a)    *No Distributions Pending Allowance*. No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

(b)    *Special Rules for Distributions to Holders of Disputed Claims*. Notwithstanding any provision to the contrary in the Plan, and except as otherwise agreed by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim

until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. All distributions made pursuant to the Plan on account of a Disputed Claim that is later deemed an Allowed Claim by the Bankruptcy Court shall be made together with any other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class; *provided, however*, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law.

(c)    *Distributions from GUC Claims Reserve*.  The Plan Administrator shall establish and administer the GUC Claims Reserve.  Each Holder of a Disputed General Unsecured Claim that becomes an Allowed General Unsecured Claim after the Effective Date shall receive the treatment set forth in Section 3.02 of the Plan. On each Periodic Distribution Date, all amounts in the GUC Claims Reserve on account of a Disputed General Unsecured Claim that has become Disallowed in whole or in part (or has been Allowed in an amount less than its Provisionally Allowed amount) shall be available for distribution to Holders of Allowed General Unsecured Claims in Class 3.

(d)    *Withholding and Reporting Requirements*.  In connection with the consummation of this Plan, to the extent applicable, the Debtors, the Liquidating Debtors, the Plan Administrator and Distribution Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim or Allowed Interest that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for providing any requested Tax Information or documentation to the Distribution Agent, and for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtors, the Liquidating Debtors, the Plan Administrator and the Distribution Agent each have the right, but not the obligation, to not make a Distribution until such Holder has (i) made arrangements satisfactory to any disbursing party for payment of any such tax obligations and (ii) provided any requested Tax Information or documentation to the Distribution Agent. The Debtors, the Liquidating Debtors, the Plan Administrator and the Distribution Agent may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim or Interest in Aceto complete and return a Form W-8 or W-9, or other applicable form, as applicable to each such Holder, and additional Tax Information.    If the Debtors, Liquidating Debtors or Plan Administrator make such a request and the Holder fails to comply before the date that is 90 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Debtors and any Claim or Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under this Plan.

Section 8.05.    **Delivery of Distributions**.

(a)    *Record Date for Distributions*.  As of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Distribution Agent shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to

recognize and make distributions only to those Holders who are Holders of Claims as of 5:00 p.m. on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

(b)    *Cash Distributions*. Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Distribution Agent, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(c)    *Address for Distributions*. Distributions to Holders of Allowed Claims shall be made by the Distribution Agent or the appropriate Servicer (i) at the addresses set forth on the proofs of Claim filed by such Holders of Claims (or at the last known addresses of such Holders of Claims if no proof of Claim is filed or if the Debtors or the Distribution Agent have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related proof of Claim, (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address, or (iv) in the case of a Holder of a Claim whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer. The Debtors, the Liquidating Debtors, and the Distribution Agent shall not incur any liability whatsoever on account of any distributions under the Plan.

(d)    *Undeliverable Distributions*. If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Distribution Agent is notified of then-current address of such Holder of the Claim, at which time all missed distributions shall be made to such Holder of the Claim without interest on the next Periodic Distribution Date. Amounts in respect of undeliverable distributions shall be returned to the Liquidating Debtors' Estate from which such distribution originated.

(e)    *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of four (4) months after such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Liquidating Debtors free of any restrictions thereon. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions, de minimis distributions, and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Distribution Agent made pursuant to any Certificate and Holders of Allowed Interest in LIHI (to the extent entitled to any distributions), and notwithstanding any provision in such indenture, Certificate or otherwise to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

(f)      *De Minimis Distributions.* Notwithstanding any other provision of the Plan to the contrary, the Distribution Agent and shall not be required to make a distribution on account of an Allowed Claim if (i) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has a value less than $50.00; *provided, however*, that the Distribution Agent shall make, or cause to be made, a distribution on a Periodic Distribution Date of less than $50.00 if the Distribution Agent expects that such Periodic Distribution Date shall be the final Periodic Distribution Date; or (ii) the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not both (x) constitute a final distribution to such Holder and (y) have a value of at least $50.00.

To the extent that any final Distribution would be *de minimis* or otherwise impracticable in the judgment of the Plan Administrator, the Plan Administrator may donate any such remaining funds to a 501(c)(3) charity.

**Section 8.06.      Compliance Matters**. In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Liquidating Debtors and Plan Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**Section 8.07.      Claims Paid or Payable by Third Parties**. The Plan Administrator shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Distribution Agent without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Distribution Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**Section 8.08.      Setoffs**. Except as otherwise expressly provided for in the Plan, the Liquidating Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Debtors or the Liquidating Debtors or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or

release by the Plan Administrator, the Debtors or the Liquidating Debtors of any such Claims, rights, and Causes of Action that the Plan Administrator, the Debtors or Liquidating Debtors may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Plan Administrator, the Debtors or the Liquidating Debtors, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.

**Section 8.09.    Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE IX

## EFFECT OF PLAN ON CLAIMS AND INTERESTS

**Section 9.01.    Vesting of Assets**. Except as otherwise explicitly provided in this Plan, as of the Effective Date, the property of each Debtors' Estate, if any, shall revest in the applicable Liquidating Debtor, as applicable, and shall be free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests.

**Section 9.02.    Compromise and Settlement**. Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims or Interests and (b) Causes of Action that the Debtors have against other Entities up to the Effective Date (subject to any applicable notice requirements under the Bankruptcy Rules and/or the Local Rules of the United States Bankruptcy Court for the District of Connecticut).  After the Effective Date, any such right shall pass to the Liquidating Debtors, and for those valued at less than $100,000.00 the Liquidating Debtors may make compromises and settlements without the need for further approval of the Bankruptcy Court (but subject to the rights of the Oversight Committee set forth in Section 5.13).  For any compromises or settlements valued at more than $100,000.00, the Liquidating Debtors, through the Plan Administrator shall file a notice with the Bankruptcy Court providing a brief explanation of the compromise/settlement, including why it is in the best interests of the Liquidating Debtors' estates.

**Section 9.03.    Exculpation and Limitation of Liability. Effective as of the Effective Date, and notwithstanding anything herein to the contrary, each Exculpated Party is hereby exculpated from any claim, obligation, Cause of Action, or liability for any postpetition action taken or omitted to be taken during the period commencing on the Petition Date through and including the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Chapter 11 Cases, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or**

omitted to be taken in connection with the Chapter 11 Cases, provided that, nothing in this Section 9.03 shall be construed to release the Exculpated Parties from criminal misconduct, gross negligence, willful misconduct, malpractice, or fraud as determined by a Final Order. Each Exculpated Party has, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the restructuring of Claims and Interests in the Chapter 11 Cases, the negotiation, formulation, or preparation of the agreements, instruments, or other documents pursuant to the Plan, and the solicitation and distribution of the Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, this paragraph shall not be construed as providing any exculpation of or release to current or former officers, directors, members or mangers of the Debtors that may be subject to a Cause of Action, or for any actions taking place after the Effective Date.

Section 9.04.    Injunction. Effective as of the Effective Date, and except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests or Causes of Action that (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) are subject to the exculpation pursuant to Section 9.03 of the Plan; or (c) are otherwise stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Debtors, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind including on account of or in connection with or with respect to any such Claims, Interests or Causes of Action that have been compromised or settled against the Debtors, Liquidating Debtors, or any Entity so exculpated (or the property or estate of the Debtors or any Entity so exculpated) on account of or in connection with or with respect to any settled, compromised or exculpated Claims, Interests or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, Liquidating Debtors or any Entity so released or exculpated (or the property or Estates of the Debtors, Liquidating Debtors or any Entity so exculpated) on account of or in connection with or with respect to any settled, compromised or exculpated Claims, Interests or Causes of Action; (3) creating, perfecting, or enforcing any Lien, claim or encumbrance of any kind against the Debtors, Liquidating Debtors or any entity so exculpated (or the property or Estate of the Debtors, Liquidating Debtors or any Entity so exculpated) on account of or in connection with or with respect to any settled, compromised or exculpated Claims, Interests or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtors, Liquidating Debtors or any Entity exculpated (or the property or Estates of the Debtors, Liquidating Debtors or any Entity so exculpated) on account of or in connection with or with respect to any settled, compromised or exculpated Claims, Interests or Causes of Action, except as set forth in Section 8.08 of the Plan, and notwithstanding an indication in a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff or subrogation pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind against the

**Debtors, Liquidating Debtors, or any Entity so exculpated (or the property or estate of the Debtors or any Entity so exculpated) on account of or in connection with or with respect to any settled, compromised or exculpated Claims, Interests or Causes of Action. For the avoidance of doubt, the Debtors are not receiving a discharge under section 524(a) of the Bankruptcy Code.**

Section 9.05.        Subordination Rights.

(a)        Except as otherwise provided in the Plan, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan

(b)        Except as otherwise provided in the Plan, the right of the Debtors or the Plan Administrator on behalf of the Liquidating Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code or otherwise is fully reserved, and the treatment afforded any Claim or Interest that becomes a subordinated Claim or Interest at any time shall reflect such subordination. Unless the Plan or the Confirmation Order otherwise provide, no distributions shall be made on account of a Subordinated Claim unless ordered by the Bankruptcy Court or otherwise provided for in this Plan.

Section 9.06.        **Protection Against Discriminatory Treatment.** Consistent with section 525 of the Bankruptcy Code, no Governmental Unit shall discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidating Debtors, Plan Administrator or another Entity with whom the Liquidating Debtors have been associated, solely because the Liquidating Debtors have been debtors under chapter 11, have been insolvent before the commencement of the Chapter 11 Cases, or have not paid a debt that is settled and released in the Chapter 11 Cases.

Section 9.07.        **Release of Liens**. Except as otherwise provided in this Plan, including Section 3.02, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Debtors and their successors and assigns.

**Section 9.08.      Reimbursement or Contribution**. If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as non-contingent or (b) the relevant Holder of a Claim has filed a contingent proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE X

## CONDITIONS PRECEDENT

**Section 10.01.      Conditions Precedent to the Effective Date of the Plan**. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 10.02 of this Plan:

(a)      the Plan shall be in form and substance acceptable to the proponents of the Plan, and any amendments or modifications to the Plan;

(b)      the Confirmation Order shall be in form and substance acceptable to the proponents of the Plan (and with respect to any changes to the Confirmation Order so-ordered or otherwise required by the Bankruptcy Court, reasonably acceptable to the proponents of the Plan);

(c)      the Confirmation Order shall have been entered and shall be a Final Order;

(d)      the Professional Claims Reserve and the Administrative and Priority Claims Reserve shall have been funded in Cash shall have been funded with the amount agreed pursuant to the Plan;

(e)      the Plan Administrator and Oversight Committee shall have been appointed and shall have assumed their respective rights and responsibilities under the Plan;

(f)      all authorizations, consents, certifications, approvals, rulings, no action letters, opinions or other documents, or actions required by any law, regulation, or order to be received or to occur in order to implement the Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Liquidating Debtors; and

(g)      all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

**Section 10.02.      Waiver of Conditions Precedent**. The conditions set forth in Section 10.01 may be waived, in whole or in part, by proponents of the Plan.

**Section 10.03.      Notice of Effective Date**. The Plan Administrator shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within one Business Day after

the conditions in Section 10.01 of this Plan have been satisfied or waived pursuant to Section 10.02 of this Plan.

Section 10.04.    **Effect of Non-Occurrence of Conditions to Consummation**. If, prior to consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

# ARTICLE XI

# BANKRUPTCY COURT JURISDICTION

Section 11.01.    **Retention of Jurisdiction**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan (without prejudice to the rights, if any, of any party in interest to seek to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and related law with respect to any issue or proceeding subject to mandatory or discretionary withdrawal), including jurisdiction to:

(a)    resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine and, if necessary, liquidate any Claims arising therefrom including Cure Amounts pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (iii) the Liquidating Debtors' amendment, modification, or supplement after the Effective Date, pursuant to Article VI of this Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

(b)    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    ensure that distributions to Holders of Allowed Claims and Interests are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)    allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including hearing and determining any and all objections to the allowance or

estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and the resolution of request for payment of any Administrative Claim;

(e)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Sale Orders;

(f)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Sale Order, or, subject to any applicable forum selection clause, any contract, instrument, release, or other document created in connection with the Plan, the Disclosure Statement or the Sale;

(g)    enter and implement such orders as may be appropriate if the Confirmation Order or the Sale Order are for any reason stayed, revoked, modified, and/or vacated;

(h)    enter and implement such orders as may be necessary or appropriate to further execute, implement and/or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements and documents created in connection with the Plan, the Disclosure Statement, and the Sale;

(i)    enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code, including but not limited to the Sale Order;

(j)    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order and the Sale Order;

(k)    hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(l)    determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code;

(m)    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(n)    hear and determine all disputes involving the existence, nature, scope, or enforcement of the exculpations and injunctions granted in connection with and under the Plan, including under Article IX of the Plan;

(o)    enforce the injunction and exculpation provisions set forth in Article IX of the Plan;

(p)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with consummation of the Plan or the Sales, including the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and the Sale Order,

including disputes arising under agreements, documents, or instruments executed in connection with this Plan or the Sale or any disputes arising in connection with any Entity's obligations incurred in connection with the Plan or the Sale;

(q)     hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, including all Causes of Action, wherever located;

(r)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(s)     enter a Final Decree closing the Chapter 11 Cases;

(t)     hear any other matter not inconsistent with the Bankruptcy Code; and

(u)     enforce all orders previously entered by the Bankruptcy Court.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**Section 12.01.     Binding Effect**. Upon the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Liquidating Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

**Section 12.02.     Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order, shall be paid on the Effective Date. The Plan Administrator on behalf of the Liquidating Debtors shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code until the Chapter 11 Cases are closed by entry of the Final Decree. Furthermore, following entry of the Confirmation Order, the Plan Administrator shall continue to file quarterly reports in compliance with Bankruptcy Rule 2015(a)(5); *provided, however*, such reports shall not purport to be prepared in accordance with GAAP, and may not be relied upon by any party for any purpose except as set forth in Bankruptcy Rule 2015(a)(5).

**Section 12.03.     Closing of Certain Debtor Cases Upon the Effective Date**.     Upon and as of the Effective Date, without the need for further order of the Bankruptcy Court or motion of, or notice from, the Debtors or the Plan Administrator, the Chapter 11 Cases of each of the Debtors shall be deemed closed without prejudice to the rights of any party in interest to seek to reopen any such Chapter 11 Cases under section 350(b) of the Bankruptcy Code; *provided, however*, that the case of Latex Foam International, LLC ("LFI") shall remain open until the Plan Administrator files a motion seeking entry of a final decree closing such case. Furthermore, (i)

all motions, contested matters, adversary proceedings and other matters with respect to those closed cases and those Debtors (including Causes of Action, Claims administration and objections to Claims) shall be administered in the open case of LFI without prejudice to the rights of any party in interest and (ii) the case caption shall be amended to reflect that the LFI case is the only remaining open case for each of the Debtors.  Upon the Effective Date, the Liquidating Debtors or the Plan Administrator may submit proposed orders for entry by the Bankruptcy Court to memorialize the closing of each of the Chapter 11 cases other than the case of LFI.

Section 12.04.    **Application of Bankruptcy Rule 7068**.  The Debtors, before the Effective Date, and the Liquidating Debtors and the Plan Administrator, after the Effective Date, are authorized to serve upon a Holder of a Disputed Claim an offer to allow judgment to be taken on account of such Disputed Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Disputed Claim must pay the costs incurred by the Debtors or the Liquidating Debtors after the making of such offer, the Debtors and the Liquidating Debtors are entitled to set off such amounts against the amount of any Distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 12.05.    **Statutory Committee Dissolution**. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve, and members thereof shall be released from all rights and duties from or related to the Chapter 11 Cases, *provided, however*, that the Creditors' Committee will stay in existence solely for the limited purpose of filing and prosecuting final fee applications and may seek payment of its Professional Claims in connection therewith.  Notwithstanding the foregoing, on the Effective Date, the Oversight Committee shall be deemed to be substituted as the party in lieu of the Creditors' Committee in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court (including any appeals pending on the Effective Date and any appeals of the Confirmation Order) without the need or requirement for the Oversight Committee to file motions or substitutions of parties and counsel.

Section 12.06.    **Post Effective Date Limitation of Notice**. After the Effective Date, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, Persons and Entities must file with the Bankruptcy Court a renewed request to receive documents pursuant to Bankruptcy Rule 2002.    After the Effective Date, the Liquidating Debtors and Plan Administrator are authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons and Entities that have filed with the Bankruptcy Court such a renewed request.

Section 12.07.    **Modification and Amendment**. Except as otherwise specifically provided in the Plan, the proponents of the Plan reserve the right to modify the Plan, subject to any applicable consent rights set forth herein, whether such modification is material or immaterial prior to Confirmation, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as

well as those restrictions on modifications set forth in the Plan) and any consent rights as set forth herein, the proponents of the Plan expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan after Confirmation, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**Section 12.08.    Confirmation of Plan**. The proponents of the Plan request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The proponents of the Plan reserve the right to amend the Plan to any extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**Section 12.09.    Additional Documents**. On or before the Effective Date, the proponents of the Plan may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Debtors or the Plan Administrator, as applicable, and Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan.

**Section 12.10.    Revocation, Withdrawal, Non-Consummation**

(a)    *Right to Revoke or Withdraw*. The proponents of the Plan reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date and file subsequent chapter 11 plans.

(b)    *Effect of Withdrawal, Revocation, or Non-Consummation*. If the proponents of the Plan revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain Claims or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be null and void in all respects. In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the proponents of the Plan or any other Entity.

**Section 12.11.    Post-Confirmation Reporting**.    After the Effective Date, in accordance with the Guidelines established by the United States Trustee, the Plan Administrator will file quarterly operating reports with Bankruptcy Court.

**Section 12.12.    Substantial Consummation of the Plan**.  The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code as provided under applicable law.

**Section 12.13.    Substitution of the Liquidating Debtors for the Debtors**.  On the Effective Date, the Liquidating Debtors shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Plan Administrator to file motions or substitutions of parties and counsel.

**Section 12.14.    Request for Expedited Determination of Taxes**.  The Debtors, the Liquidating Debtors, and the Plan Administrator, as applicable shall have the right to request an expedited determination under section 505 of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through dissolution.

**Section 12.15.    Notices**. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Debtors, Liquidating Debtors or Plan Administrator:

> Rehmann Turnaround and Receivership, LLC
> Attn:  Chip Hoebeke, CPA
> 2330 East Paris Ave SE
> Grand Rapids, MI 49516
> E-mail: chip.hoebeke@rehmann.com

*With a copy (which shall not constitute notice) to:*

> SCHAFER AND WEINER, PLLC
> Michael E. Baum
> John Stockdale, Jr.
> 40950 Woodward Ave., Ste. 100
> Bloomfield Hills, MI  48304
> (248) 540-3340
> E-mail: MBaum@schaferandweiner.com

> -and-

> NEUBERT, PEPE & MONTEITH, P.C.
> Douglas S. Skalka
> 195 Church Street, 13th Floor
> New Haven, Connecticut 06510
> 203) 821-2000
> E-mail: dskalka@npmlaw.com

If to the Oversight Committee:

PULLMAN & COMLEY, LLC
 Irve J. Goldman, Esq.
850 Main Street, 8th Floor
P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2213
E-mail: jgoldman@pullman.com

**Section 12.16.    Term of Injunctions or Stays**. Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 12.17.    Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Connecticut shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control). Corporate governance matters shall be governed by the laws of the state of incorporation, formation, or functional equivalent thereof, as applicable, of the applicable Liquidating Debtor.

**Section 12.18.    Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims against or Interests in the Debtors (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.  All Claims and debts shall be fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**Section 12.19.    Entire Agreement**. Except as otherwise indicated, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**Section 12.20.    Severability**. If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable

to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, and (c) non-severable and mutually dependent.

**Section 12.21.    No Waiver or Estoppel**. Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**Section 12.22.    Conflicts**.  In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of this Plan shall govern. In the event the provisions of this Plan and the Sale Order conflict with respect to the Acceptable Sale, the Sale Order shall govern. In the event that the provisions of this Plan and the provisions of the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

Respectfully submitted,

By: __/s/ *BASF Corporation (by Peter Argiriou)*

Member of the Creditors/ Committee (in its capacity as such)

By: __/s/ *James V. MeTevia*_____

Representative Latex Trust (in its capacity as such)

## **Exhibit A**

### **Causes of Action**

Causes of Action include, but are not limited to, (a) any action seeking to recover payments made by or on behalf of the Debtors prior to the Petition Date, including, but not limited to payments identified on the Debtors' schedules and statements of financial affairs (and incorporated herein by reference) Filed on September 6, 2019 at Docket No. 55, on September 9, 2019 at Docket No. 99, and on August 29, 2019 at Docket No. 86, (b) any fraudulent transfer claims, (c) any action against the Debtors' current or former director, officer, member or manager for, *inter alia*, breaches of fiduciary duties and such other claims related to assertions made in the *Amended Motion for Order to Authorize Standing to Investigate and Initiate Litigation* Filed on June 22, 2020 (Docket No. 617), (d) any action against the Debtors' professionals or advisors related to advice provided to the Debtors and (e) any claims for refunds, credits, overpayments or other amounts due to the Debtors. Unless otherwise released under Article VIII of the Plan or acquired under the Stalking Horse APA, the Debtors, and the Plan Administrator, as applicable, expressly reserve all claims and Causes of Action against any Entity listed on Schedule A/B, Schedule D, Schedule E, and Schedule F of each Debtor to the extent such Entities owe or may in the future owe money to the Debtors. Debtors and the Plan Administrator, as applicable expressly reserve all claims and Causes of Action against any Entity listed on (a) with respect to the schedules, Schedule A/B, Schedule D, Schedule E, Schedule F, Schedule G, and Schedule H of each Debtor and (b) the SoFA of each Debtor, in each case to the extent such Entities owe or may in the future owe money to the Debtors.

## **Exhibit B**

### **D&O Policies**

| | Policy Type | Insurer | Policy Number |
|---|---|---|---|
| 1 | Directors & Officers Liability | Argonaut Insurance Company | MLX 7602780-1 |
| 2 | Directors & Officers Liability | National Casualty Company | EKO3303709 |
| 3 | Directors & Officers Liability | National Casualty Company | EKO3267411 |

## Exhibit C

### Assumed Executory Contracts

| | Policy Type | Insurer | Policy Number | Cure Amount |
|---|---|---|---|---|
| 1 | Directors & Officers Liability | Argonaut Insurance Company | MLX 7602780-1 | $0.00 |
| 2 | Directors & Officers Liability | National Casualty Company | EKO3303709 | $0.00 |
| 3 | Directors & Officers Liability | National Casualty Company | EKO3267411 | $0.00 |

Exhibit C-1

## **EXHIBIT C**

**Form of Notice of Effective Date**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Latex Foam International, LLC, | ) | Case No. 19-51064 |
| Latex Foam International Holdings, Inc., | ) | Case No. 19-51065 |
| Latex Foam Assets Acquisition LLC, | ) | Case No. 19-51066 |
| PureLatex Bliss, LLC, | ) | Case No. 19-51067 |
| PLB Holdings, LLC | ) | Case No. 19-51068 |
| | ) | |
| Debtors. | ) | (Jointly Administered under Case No. 19-51064) |
| | ) | |
| | ) | Re: Docket No.  765 |
| | ) | |

**NOTICE OF (I) ENTRY OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF LIQUIDATION OF
LATEX FOAM INTERNATIONAL, INC. AND ITS AFFILIATED DEBTORS AND (II)
<u>OCCURRENCE OF EFFECTIVE DATE</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Plan Confirmation.** On November [•], 2020, this Court entered an order (the "Confirmation Order") confirming the *Second Amended Joint Plan of Liquidation of Latex Foam International, Inc. and Its Affiliated Debtors* (the "Plan") [Docket No. 765].[1]

2.      **Copies of Plan and Confirmation Order.** The Confirmation Order included the Plan as Exhibit B. The Confirmation Order, the Plan, and the other documents filed in these cases, are available for a nominal fee at https://ecf.ctb.uscourts.gov/ (with use of a PACER account).

3.      **Effective Date.** On [Month] [•], 2020, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Section 10.01 of the Plan have been satisfied or waived.

4.      **Professional Claims**.

        a.      *Final Fee Applications*. All final requests for payment of Professional Claims must be filed no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

        b.      *Post-Effective Date Retention*. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Plan Administrator shall be permitted to employ and pay professionals in accordance with the Plan. Notwithstanding anything to the contrary in the plan, the Plan Administrator shall file a notice with the Court setting forth the terms of retention any professional retained by the Plan Administrator post Effective Date, which notice shall be filed prior to payment by the Plan Administrator of any fees/expenses to such post Effective Date professional.

5.      **Administrative Claims**. Except as otherwise provided in the Plan and as set forth in Section 2.01 and Section 2.02 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit A to the Confirmation Order, with the Court and served on counsel for the Liquidating Debtors and the Plan Administrator later than the Administrative Claim Bar Date, which shall be 20 days after the Effective Date. Any request for payment of an Administrative Claim pursuant to Section 2.01 of the Plan that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Liquidating Debtors or the Plan Administrator. The Plan Administrator (in accordance with Sections 5.10(b) and 5.13 of the Plan) may settle any Administrative Claim without further Bankruptcy Court approval. In the event that the Liquidating Debtors or the Plan Administrator object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

---

[1]      Capitalized terms used but not defined herein have the meanings assigned to them in the Confirmation Order or, if not used therein, in the Plan.

6.      **Claims Objection Deadline. "Claims Objection Deadline"** means the later of (a) (i) as to Rejection Damages Claims, the first Business Day that is at least 120 days after such Rejection Damages Claim is timely filed pursuant to Section 6.01(b) of the Plan; (ii) as to late-filed proofs of Claim, the first Business Day that is at least 60 days after a Final Order is entered deeming the late-filed Claim timely filed; and (iii) as to all other Claims the first Business Day that is at least 120 days after the Effective Date; or (b) such later date as may be established by the Bankruptcy Court by motion of the Plan Administrator, which deadline shall be automatically extended upon the filing of such a motion until such time as the Bankruptcy Court enters an order on such motion.

7.      **Executory Contracts and Unexpired Leases to Be Rejected.** Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts contained on Exhibit C to the Plan; (ii) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; (iv) is an Insurance Contract; or (v) is otherwise assumed pursuant to the terms in the Plan. The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements in the Plan.

8.      **Executory Contracts to Be Assumed.** Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, each Executory Contract that is listed on the Schedule of Assumed Executory Contracts contained on Exhibit C to the Plan shall be deemed assumed, in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Confirmation Order constitutes an order of the Bankruptcy Court approving such assumptions, pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Liquidating Debtors' assumption of such Executory Contract, then such provision shall be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to Article VI of the Plan will revest in and be fully enforceable by the Plan Administrator on behalf of the Liquidating Debtors, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

9.      **Rejection Damages Bar Date.** Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date, the effective date of rejection, or the date notice of such rejection is transmitted by the Debtors or the Plan

Administrator, as applicable, to the counterparty to such Executory Contract or Unexpired Lease. Any proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Liquidating Debtors, without the need for any objection by the Debtors or Liquidating Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

10.     **Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002.** After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all creditors and other parties in interest (except those listed in the Confirmation Order) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.

Dated: [Month] [•], 2020

**LOWENSTEIN SANDLER LLP**

*/s/ Wojciech F. Jung*
Mary E. Seymour, Esq.
Wojciech F. Jung, Esq.
Colleen M. Maker, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to Official Committee of Unsecured Creditors*